[L.A. No. 31800. Jan. 28, 1985.]

RAMONA R., a Minor, Petitioner, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent;
THE PEOPLE, Real Party in Interest.

**COUNSEL**

Wilbur F. Littlefield, Public Defender, Paul A. James, Alan C. Oberstein, Alan H. Simon, David Jackson and Gary M. Mandinach, Deputy Public Defenders, for Petitioner.

Quin Denvir, State Public Defender, Kathleen Kahn, Victoria Sleeth and George L. Schraer, Deputy State Public Defenders, as Amici Curiae on behalf of Petitioner.

No appearance for Respondent.

Robert H. Philibosian, District Attorney, Donald J. Kaplan and George M. Palmer, Deputy District Attorneys, for Real Party in Interest.

---

**OPINION**

**MOSK, J.—** ■ ■ ■ ■ In this prosecution for murder, minor defendant Ramona R. seeks a writ of mandate to compel respondent court to vacate an order declaring her unfit to be tried in juvenile court. (Welf. & Inst. Code, § 707, subd. (c) [hereinafter section 707(c)].)[1] She contends the court erred in refusing to grant her immunity from use at trial of any statements she made in the fitness hearing or to her probation officer. We must decide whether prior California law, which provided for such use immunities, was nullified by article I, section 28, subdivision (d), of the California Constitution (hereinafter section 28(d)), adopted by the electorate as part of Proposition 8 at the June 1982 Primary Election. If it was, we must further decide whether section 707(c), which places the burden of proving fitness for juvenile court treatment on the minor, is unconstitutional because it compels the minor to choose between her due process right to testify and her privilege against self-incrimination. As will appear, we need reach only the first question, for we hold that the use immunities heretofore recognized are preserved by the exception for statutory privileges provided in section 28(d).

A brief review of the challenged procedure will be helpful. Juvenile court jurisdiction attaches in cases in which the defendant is "under the age of

---

[1]This proceeding is properly before us on a writ because "a certification order may normally be challenged only by extraordinary writ in collateral proceedings commenced prior to the commencement of the trial on those charges for which the defendant is certified as unfit for treatment within juvenile court facilities." (*People* v. *Chi Ko Wong* (1976) 18 Cal.3d 698, 714 [135 Cal.Rptr. 392, 557 P.2d 976], disapproved on another point in *People* v. *Green* (1980) 27 Cal.3d 1, 33 [164 Cal.Rptr. 1, 609 P.2d 468].)

18 years when he violates any law of this state" (Welf. & Inst. Code, § 602). However, if the defendant is aged 16 years or older at the time of the offense, the district attorney may move to have the minor tried as an adult. (*Id.*, § 707, subd. (a) [hereinafter section 707(a)].) If the district attorney so moves, the juvenile court conducts a fitness hearing to determine if the minor is "amenable to the care, treatment, and training program available through the facilities of the juvenile court." (*Ibid.*) The probation officer is required to file a report on the minor's "behavioral patterns and social history"; the minor and the district attorney may submit other relevant evidence. In reaching its decision the court must evaluate the following criteria: "(1) The degree of criminal sophistication exhibited by the minor. [¶] (2) Whether the minor can be rehabilitated prior to the expiration of the juvenile court's jurisdiction. [¶] (3) The minor's previous delinquent history. [¶] (4) Success of previous attempts by the juvenile court to rehabilitate the minor. [¶] (5) The circumstances and gravity of the offense alleged to have been committed by the minor." (*Ibid.*)

■ Ordinarily, the burden of proving unfitness is on the prosecution. (1 Cal. Juvenile Court Practice (Cont.Ed.Bar 1981) § 5.27, p. 162.) But if the minor is charged with certain felonies enumerated in section 707, subdivision (b), he is presumed to be unfit for juvenile court treatment and must shoulder the burden of proving that he is a fit and proper subject under the five criteria listed above (§ 707(c); *People* v. *Superior Court (Steven S.)* (1981) 119 Cal.App.3d 162, 177 [173 Cal.Rptr. 788, 22 A.L.R.4th 1140]).

This case began on October 12, 1982, when Ramona's guardian was shot and killed with his own handgun. He was then repeatedly stabbed with a knife and cut with an axe. Ramona turned herself in to the police the following day after she learned that she was wanted for questioning about the killing. She agreed to take a lie detector test, but on the advice of her attorney she declined to be interviewed by or to make any statement to the probation officer.

The People filed a murder charge in juvenile court, because Ramona was 17 years old at the time. (Welf. & Inst. Code, § 602.) Subsequently, the People moved to have her declared unfit for juvenile court proceedings. (§ 707(c).) At the fitness hearing the minor presented no evidence. She declined to testify, again on the advice of counsel, and her attorney chose not to introduce a psychiatric evaluation prepared for the hearing on the ground that any incriminating statement made by her at the hearing could be used against her at a subsequent criminal trial.

The People introduced the probation officer's report. It stated that the results of the lie detector test were "inconclusive because of minor's erratic

behavior during the test," but that her answers to questions dealing with her role in the killing showed she was being deceptive. The probation officer noted the investigating detective's speculation that the killing arose out of a quarrel between the minor and her guardian over her alleged involvement in prostitution and drug abuse; but he expressed puzzlement as to the actual reason for the killing, declaring "One may suppose that she had differences with her guardian, but there is nothing evident at this time to even guess why she took her grievance to such extreme." He nevertheless concluded that she was not amenable to treatment in the juvenile system. The referee agreed, finding her not to be a fit and proper subject for treatment under Juvenile Court Law because of the gravity of her offense and the unlikelihood of her rehabilitation before the expiration of the juvenile court's jurisdiction. (§ 707(c), subsecs. (2) & (5).) Murder charges are currently pending against her in the superior court.

Prior to the passage of Proposition 8, the rule was clear that statements made by a minor to a probation officer and to a court in a fitness hearing could not be introduced as substantive evidence against the minor at trial. The rule was enunciated in *Bryan* v. *Superior Court* (1972) 7 Cal.3d 575, 587 [102 Cal.Rptr. 831, 498 P.2d 1079]: "evidence of admissions made by a minor to the juvenile judge or the juvenile probation officer should be excluded in a criminal prosecution, for allowing this evidentiary use of the admissions would frustrate the protective and rehabilitative philosophy of the Juvenile Court Law . . . ." Holding in *In re Wayne H.* (1979) 24 Cal.3d 595 [156 Cal.Rptr. 344, 596 P.2d 1], that a minor's statements to a probation officer are inadmissible for any purpose at the guilt phase, we discussed the policies involved: "The cases have stressed the law's interest in encouraging complete candor between a defendant and his probation officer in the probation interview. The purpose of such an interview is not the marshalling of evidence on the issue of guilt, but rather the assembling of all available information relevant to an informed disposition of the case if guilt is established (§§ 280, 702; Pen. Code, § 1203), or to assist in the evaluation of the minor's fitness for treatment as a juvenile (§ 707). Such decisions, courts have uniformly concluded, should be based on the most complete knowledge of the defendant's background that is possible. His description and explanation of the circumstances of the alleged offense, and his acknowledgment of guilt and demonstration of remorse, may significantly affect decisions about punishment or transfer for adult proceedings." (*Id.* at pp. 599-600.) "The minor who is subject to the possibility of a transfer order should not be put to the unfair choice of being considered uncooperative by the juvenile probation officer and juvenile court because of his refusal to discuss his case with the probation officer, or of having his statements to that officer used against him in subsequent criminal proceedings." (*Bryan* v. *Superior Court, supra,* 7 Cal.3d at pp. 587-588.) "The

testimony of the juvenile may be relevant in the application of any of [the section 707(c)] criteria. As to the juvenile's criminal sophistication, his chances of rehabilitation, his past delinquent history and the success of previous attempts to rehabilitate him, the juvenile may be able to rebut the implications of a bare record by cross-examination of the probation officer and testimony of his own witnesses. Significant evidence may well exist only in the knowledge of the juvenile. As to the circumstances and gravity of the offenses alleged, the juvenile may be the only witness who can present any mitigating circumstances for the court to consider. Yet such testimony risks giving the prosecutor the advantage of an admission which could be used against the juvenile at the trial on the issue of guilt." (*Sheila O.* v. *Superior Court* (1981) 125 Cal.App.3d 812, 815 [178 Cal.Rptr. 418].)

We have likened the quandary of a juvenile subject to a fitness hearing to that of a probationer facing revocation of probation for a crime he allegedly committed. When the probation revocation hearing precedes the trial on guilt, the probationer must decide whether to cooperate fully with the probation officer and the court, thereby obtaining fair treatment at the hearing, or to remain silent and preserve his privilege against self-incrimination. In *People* v. *Coleman* (1975) 13 Cal.3d 867 [120 Cal.Rptr. 384, 533 P.2d 1024], we exercised our supervisory powers over the courts to prevent this dilemma. We noted that "It is apparent that the policies served by the due process guarantee of an opportunity for a probationer to be heard at his probation revocation hearing are impinged when he declines to avail himself of this chance for fear of self-incrimination. Constitutional values are similarly disserved when the probationer resolves the conflict in the opposite way by risking self-incrimination so as to testify at such a hearing." (*Id.* at pp. 874-875.) This reasoning applies equally to a juvenile considering his options with respect to an interview with a probation officer, a fitness hearing, and a guilt-phase trial. (*Bryan, supra,* 7 Cal.3d at p. 587.)

Basing its decision on *Coleman, Bryan,* and *Wayne H.,* the Court of Appeal in *Sheila O.* v. *Superior Court, supra,* 125 Cal.App.3d 812, 816-817, held that "testimony given by the juvenile at the fitness hearing is inadmissible at the jurisdictional hearing except for the purpose of impeachment."[2] Thus *Bryan, Wayne H.,* and *Sheila O.* combine to give a juvenile in a position such as that of Ramona substantial protection against the use at trial of any statements she may make to her probation officer or to the court at her fitness hearing.

Questions arise as to the continuing validity of these cases after the passage of Proposition 8, which added section 28(d) to article I of the Consti-

---

[2]We do not here reach the question whether the testimony may be used for purposes of impeachment. This dictum in *Sheila O.* is thus neither approved nor disapproved.

tution. That section reads: "Except as provided by statute hereafter enacted by a two-thirds vote of the membership in each house of the Legislature, relevant evidence shall not be excluded in any criminal proceeding, including pretrial and post conviction motions and hearings, or in any trial or hearing of a juvenile for a criminal offense, whether heard in juvenile or adult court. Nothing in this section shall affect any existing statutory rule of evidence relating to privilege or hearsay, or Evidence Code, Sections 352, 782 or 1103. Nothing in this section shall affect any existing statutory or constitutional right of the press."

■ Amicus curiae State Public Defender urges that the use immunities provided by *Bryan, Wayne H.,* and *Sheila O.* fall within the exception to section 28(d) for "existing statutory rule[s] of evidence relating to privilege." He relies on Evidence Code section 940 (hereinafter section 940), which declares that "To the extent that such privilege exists under the Constitution of the United States or the State of California, a person has a privilege to refuse to disclose any matter that may tend to incriminate him." The Attorney General, in the June 10, 1982, supplement to his Guide to Proposition 8 (1982) at page 4-52, concedes that "[s]ection 940 is a statutory rule of evidence relating to privilege deriving content from both the state and federal constitutions." He argues, however, that section 940 "establishes a *testimonial* privilege; it is inapplicable to extrajudicial statements." (*Ibid.,* italics in original.) A close examination of section 940 reveals that the Attorney General's position lacks merit.

It is true that section 940 does not on its face refer to use immunities. However, the language of that provision is purposefully broad, and is meant to include within its reach judicial decisions relating to the privilege against self-incrimination. The Law Revision Commission comment to section 940 declares that "Section 940 does not determine the scope of the privilege against self-incrimination; the scope of the privilege is determined by the pertinent provisions of the California and United States Constitutions as interpreted by the courts." Thus, we must determine whether the use immunities of *Bryan, Wayne H.,* and *Sheila O.* are mandated by the United States or California Constitutions, including judicial interpretation thereof. If they are, they fall within the exception to section 28(d) for statutory privileges, and thus survive the adoption of Proposition 8.

In *People* v. *Coleman, supra,* 13 Cal.3d 867, 878-886, we examined federal law in the area of use immunities. We declined to decide whether such immunities were compelled by the United States Constitution, because "[t]he federal law on the subject is currently in a state of confusion." (*Id.* at p. 878.) The developments since that time have not changed our opinion.

(Compare, e.g., *Melson* v. *Sard* (D.C.Cir. 1968) 402 F.2d 653, 655 ["any self-incriminatory statements made in a parole revocation hearing shall not be used affirmatively against the parolee in any subsequent criminal proceeding"], with *Ryan* v. *State of Montana* (9th Cir. 1978) 580 F.2d 988, 991 [no immunity against introduction as evidence at trial for statements made by a probationer at a revocation hearing].) Thus, we must base our determination on the state Constitution.

We begin with our decision in *Coleman.* In that case we declined to rest our holding on the Constitution, but only because we deemed such a determination to be unnecessary, as "our judicially declared exclusionary rule provides protection 'coextensive with the scope of the privilege against self-incrimination,' [citation] . . . . Even if we assume, arguendo, that defendant's constitutional claim has merit, the exclusionary rule we propound today gives probationers all the relief to which they are constitutionally entitled." (*Id.,* 13 Cal.3d at p. 892.) However, *Coleman* clearly demonstrates that the use immunities there adopted are essential to California's privilege against self-incrimination.

*Coleman* examined in depth the need for use immunities in probation hearings to protect the privilege against self-incrimination. "Of the many and varied policies underlying the privilege against self-incrimination, we hold at least two to be adversely affected by permitting a probationer's testimony at his revocation hearing to be used against him at the subsequent criminal trial for the very misconduct at issue in the revocation proceeding." (*Id.* at p. 875.) First, "Together with the demands of due process that an accused be presumed innocent and that his guilt be established beyond a reasonable doubt [citations], the privilege against self-incrimination requires the prosecution in a criminal trial to produce sufficient evidence to establish the defendant's guilt *before* he must decide whether to remain silent or to testify in his own behalf. . . . [¶] The heavy burden thus placed upon the prosecution in a criminal trial to prove through its own investigation the guilt of the defendant may be substantially lightened if the prosecution is allowed to take advantage of the defendant's testimony at a prior probation revocation hearing." (*Id.* at pp. 875-876.) This reasoning applies equally to the prosecution in the trial of a minor following a fitness hearing: if the minor's statements to his probation officer or to the court at the hearing can be introduced by the prosecution as substantive evidence in the guilt phase, the prosecution's burden is impermissibly lightened.

"The second policy underlying the privilege against self-incrimination which is undermined by forcing a probationer to choose between the privilege and his opportunity to be heard at his revocation hearing, is our 'unwillingness to subject those suspected of crime to the cruel trilemma of self-

accusation, perjury or contempt.' (*Murphy* v. *Waterfront Comm'n* [(1964) 378 U.S. 52, 55 [12 L.Ed.2d 678, 681, 84 S.Ct. 1594)].)" (*Coleman, supra,* 13 Cal.3d at p. 878.) Again, our analysis regarding a probationer's revocation hearing applies equally to a minor's fitness hearing and interview with a probation officer: "Although a probationer [or minor] is not faced with contempt if he remains silent at his revocation hearing [or fitness hearing or interview], he may well find himself in an analogous predicament. He might, as we have stated, seriously incriminate himself if he exercises his right to be heard, particularly where his testimony would consist of a truthful explanation of mitigating circumstances [or circumstances relevant to the five criteria of section 707 (c)] surrounding the charged probation violation [or offense]. If he remains silent he not only loses his opportunity to present a conceivably convincing case against revocation [or for treatment under the juvenile court laws] but also incurs the risk that notwithstanding the ideals of the Fifth Amendment [or article I, section 15, of the California Constitution] his silence will be taken as an indication that there are no valid reasons why probation should not be revoked [or he should not be tried as an adult]. To avoid the adverse effects of the foregoing alternatives, the probationer [or minor] may be tempted to testify falsely in a manner which will not damage his defense at a subsequent criminal trial." (*Ibid.*)[3] "To force an individual to choose one of three such unpalatable alternatives runs counter to our historic aversion to cruelty reflected in the privilege against self-incrimination." (*Ibid.*)

There is a final reason why we hold the California Constitution to require that testimony a minor gives at a fitness hearing or statements he makes to his probation officer may not be used against him at a subsequent trial of the offense. This is because the consequences flowing from his "trilemma" are significant. The result of a fitness hearing is not a final adjudication of guilt; but the certification of a juvenile offender to an adult court has been accurately characterized as "the worst punishment the juvenile system is empowered to inflict." (Note, *Separating the Criminal from the Delinquent: Due Process in Certification Procedure* (1967) 40 So.Cal.L.Rev. 158, 162.) Here, because Ramona was bound over to criminal court to face murder

---

[3]If a minor refuses to speak to the probation officer, he prejudices his position because the probation officer must present a report at the fitness hearing. (§ 707(a).) At a minimum, that report will reflect the minor's failure to give his views to the probation officer. Moreover, the probation officer may consider the minor to be uncooperative because of his refusal to talk (*Bryan, supra,* 7 Cal.3d at pp. 587-588); but even if he does not, it is unlikely he will recommend that the minor be found fit for juvenile court treatment because of the lack of an interview to determine for himself whether the minor can be rehabilitated. In the case before us, that fact is made very clear: the probation officer was unable to comprehend from the evidence he had heard why Ramona would have desired her guardian to be dead, but given the grievous nature of the alleged crime and the paucity of information in her favor, he recommended that she be found unfit.

charges, she could face a penalty as severe as life imprisonment. (Pen. Code, §§ 190, 190.5.) Had she been found fit to be rehabilitated in the juvenile system, she normally could not have been confined to the Youth Authority beyond her 25th birthday. (Welf. & Inst. Code, § 1771.)

A finding of fitness is not such a bonanza for a minor, however, that he can be considered not to need use immunity on a theory that he faces only rehabilitation in the juvenile system. A minor can be confined for years to the Youth Authority. As Justice Musmanno so stirringly pointed out 30 years ago, the sanctions of the juvenile justice system are severe: The "Commonwealth categorically declares in its brief that 'commitment to an industrial school is not punishment.' But it certainly does not come under the classification of pleasure. Calling a reformatory an 'industrial school' does not mitigate its bleakness, loneliness and destitution of parental love and care. [¶] What is punishment? It is the infliction of pain, sorrow, and grief. To take a child from the comfort of his home, the joy of his companions and the freedom of field, river and wood, and confine him to a building with whitewashed walls, regimented routine and institutional hours is punishment in the strictest sense of the word. To say, as the Commonwealth says, that this institutionalized incarceration is 'for the care and treatment' of the juvenile does not make it any less abhorrent to the boy [or, presumably, to the girl] of spirit, health and energy." (*Holmes' Appeal* (1954) 379 Pa. 599, 615-616 [109 A.2d 523], dis. opn. of Musmanno, J.) Thus we hold that use immunity applies even when the minor has been found fit for treatment under the juvenile laws.

Let a peremptory writ of mandate issue directing respondent court to vacate its order finding petitioner not a fit and proper subject to be dealt with under the Juvenile Court Law, and to conduct a new fitness hearing consistent with the views expressed herein.

Bird, C. J., Kaus, J., Broussard, J., Reynoso, J., and Weil, J.,* concurred.

**GRODIN, J.,** Concurring.—I understand the majority to hold that California's privilege against self-incrimination is violated unless a juvenile is provided with use immunity for statements he makes to a probation officer or testimony he gives at a fitness hearing. To reach that conclusion, we must necessarily find that a juvenile's testimony is compelled by the nature of the fitness proceeding. The proceeding combines relaxed evidentiary rules, a relatively low burden of proof, and, most importantly, a presumption of unfitness. Taken together, these factors create a substantial likelihood that

---

*Assigned by the Chairperson of the Judicial Council.

the juvenile will be found unfit unless he testifies in his own behalf. I believe that this risk of an adverse judgment is so great that it constitutes a compulsive sanction against exercise of the self-incrimination privilege. For these reasons, which I believe are implicit in the majority opinion, I concur.

The petition of real party in interest for a rehearing was denied April 4, 1985. The opinion was modified to read as printed above. Lucas, J., was of the opinion that the petition should be granted.