[Crim. No. 12743. Third Dist. Aug. 29, 1985.]

THE PEOPLE, Plaintiff and Respondent, v.
WILLIAM JESSE CLARK, Defendant and Appellant.

**[Opinion certified for partial publication.\*]**

*\*Pursuant to California Rules of Court, rules 976(b) and 976.1, parts II and III are not to be published.

COUNSEL

William C. Spater, under appointment by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Willard F. Jones and Charles P. Just, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

CARR, J.—In a joint trial with his codefendant, Lloyd, a jury convicted defendant of robbery (Pen. Code, § 211), with a finding he was armed with a firearm during the commission of that offense. (Pen. Code, § 12022, subd. (a).) After waiver by defendant of a jury trial as to two charged prior convictions, murder (Pen. Code, § 187) and assault with a deadly weapon (Pen. Code, § 245), the trial court found both prior convictions to be true. Defendant was sentenced to prison for a total term of five years.

On appeal, defendant contends: (1) error in the admission for impeachment of his un-Mirandized prearrest statements to Officer Ramirez; (2) error in permitting the prosecution to impeach him with his prior convictions; and (3) insufficiency of the evidence to sustain his conviction.

FACTS

At approximately 9 p.m. on September 21, 1982, David Preszler robbed the Payless Shoe Store in Stockton at gunpoint. The money, some of which was in a white bank bag, was placed in a brown paper bag with the words "Alpha Beta" printed on it. Preszler forced the two employees into the bathroom and escaped out the back door.

At about the same time, Officer Hatchard was in the parking lot of the shopping center in which the Payless Shoe Store was located, patrolling in an unmarked car for auto burglaries. The officer saw a person, later identified as codefendant Lloyd, running through the parking lot, clutching something to his chest. Lloyd entered a white car, which then was driven out of the parking lot. The officer, suspecting an auto burglary, followed.

The officer had followed the white car briefly when it accelerated in an apparent effort to escape. The car ran two stop signs and made a reckless turn across oncoming traffic. At that point, the officer activated his siren and interior red light. The chase continued until the white car went out of

control and struck a tree on a traffic island. When the officer pulled up behind the car, both doors were open and the officer could see two people running away. The officer yelled "halt, police," and one person turned to look, but both continued running. They jumped over a nearby fence, and the officer broadcast their descriptions. The defendant was arrested shortly thereafter. The crotch of his pants had been torn and he was breathing hard as if he had been running. The Alpha-Beta bag containing the white bank bag and the money was found 20 to 25 feet from where codefendant Lloyd jumped over the fence. Lloyd was also arrested in the immediate vicinity.

David Preszler was charged together with defendant herein and his co-defendant Lloyd with the robbery. Preszler pled guilty and at the joint trial of defendant and codefendant Lloyd testified that he was the sole perpetrator of the robbery, having escaped from the scene on a stolen bicycle, which he rode to the area where the bag of stolen money was found; that he dropped the bag of money at the place where it was found because he had disabled the bicycle on a speed bump and heard the police sirens, which alarmed him; that he had been a good friend of his codefendant when both were in prison and upon defendant's release, Lloyd, who apparently had been released earlier, had written to him and visited with him in early 1982. Further that in the summer months of 1982, Lloyd had telephoned that he was very upset because Lloyd and his wife had separated. Defendant came to Stockton from his home in Redding to lend spiritual comfort and help to Lloyd. On the evening of the robbery, he had driven to the K-Mart parking lot with Lloyd, who left the car to investigate the Cameo Club; that Lloyd returned hurriedly and drove the car out of the parking lot stating he had seen some members of the Nuestra Familia, a prison gang with whom both defendant and Lloyd had had contact in prison and whom both feared. When they observed a car following them, they assumed it was a Nuestra Familia gang member and they accelerated in an attempt to lose their pursuer.

I

Defendant's initial contention has merit and the error requires reversal.

During the prosecution case, the trial court ruled that any statement defendant made to police prior to receiving the warnings required by *Miranda* v. *Arizona* (1966) 384 U.S. 436 [16 L.Ed.2d 694, 86 Cal.Rptr. 1602, 10 A.L.R.3d 974] were inadmissible as part of the prosecutor's case in chief.

Defendant testified on his own behalf. During his cross-examination, over objection, the court ruled that statements made by defendant prior to his *Miranda* advisement would be admissible for purposes of impeachment. The defendant then testified in response to questions by the prosecutor that he

did not recall telling Officer Ramirez he had ripped his pants while jogging, that he did not know how he cut his hand, and that he did not know anyone named Lloyd. On rebuttal, Officer Ramirez testified defendant told him that he had torn his pants while jogging, did not remember how he cut his hand, and did not know codefendant Lloyd.

██      Defendant urges that statements taken in violation of *Miranda* are inadmissible for impeachment purposes under the rule established in *People* v. *Disbrow* (1976) 16 Cal.3d 101, 113 [127 Cal.Rptr. 360, 545 P.2d 272]. The People assert that enactment of article I, section 28, subdivision (d) of the California Constitution has abrogated the *Disbrow* rule and substituted the federal standard of admissibility of impeachment evidence. ██      That standard permits evidence of prior inconsistent statements of the defendant, if otherwise uncoerced and voluntary, to be used for impeachment even though obtained in violation of *Miranda*. (*Harris* v. *New York* (1971) 401 U.S. 222, 224-225 [28 L.Ed.2d 1, 4, 91 S.Ct. 643].)

In *People* v. *Disbrow, supra,* 16 Cal.3d 101 the court acknowledged *Harris* v. *New York, supra,* 401 U.S. 222, 224-225 [28 L.Ed.2d 1, 4] but expressly rejected its holding and ruling on state grounds alone held "that the privilege against self-incrimination of article I, section 15, of the California Constitution precludes use by the prosecution of any extrajudicial statement by the defendant, whether inculpatory or exculpatory, either as affirmative evidence *or for purposes of impeachment,* obtained during custodial interrogation in violation of the standards declared in *Miranda* and its California progeny. Accordingly, we overrule *Nudd* and declare that *Harris* is not persuasive authority . . . in California."[1] (16 Cal.3d at p. 113, italics added.)

██      The People do not contest that defendant's statements to Officer Ramirez were obtained in violation of *Miranda* but urge article I, section 28, subdivision (d) (hereinafter 28(d)), while silent on the subject, must be interpreted as presuming supremacy of the federal law as such section implicitly acknowledges such supremacy.[2] The subdivision provides in part that "[e]xcept as provided by statute hereafter enacted by a two-thirds vote of the membership of each house of the Legislature, relevant evidence shall not be excluded in any criminal proceeding, . . . whether heard in juvenile or adult court. *Nothing in this section shall affect any existing statutory rule of evidence relating to privilege* or hearsay, or Evidence Code sections 352, 782 or 1103." (Italics added.)

---

[1]*People* v. *Nudd* (1974) 12 Cal.3d 204, 208 [115 Cal.Rptr. 372, 524 P.2d 844], in a four to three decision, the majority adopted the rationale of the *Harris* case.

[2]The provisions of Proposition 8 are applicable to the present offense. (*People* v. *Smith* (1983) 34 Cal.3d 251, 257-258 [193 Cal.Rptr. 692, 667 P.2d 149].)

The People's argument founders on the explicit language of this subdivision. It states an *exception* to 28(d): "Nothing in this section shall affect . . . ." What is not affected by 28(d) is "any existing statutory rule of evidence relating to privilege." That includes Evidence Code section 940, which provides: "To the extent that such privilege exists under the Constitution of the United States or the State of California, a person has a privilege to refuse to disclose any matter that may tend to incriminate him." (See also Evid. Code, § 930.) What section 940 explicitly recognizes is the continued existence and viability of the constitutional provisions relating to self-incrimination. That being the case, these constitutional provisions, including the self-incrimination provisions of article I, section 15 of the California Constitution, are wholly exempted from the sway of 28(d). So much as been held by the California Supreme Court. (*Ramona R.* v. *Superior Court* (1985) 37 Cal.3d 802, 808 [210 Cal.Rptr. 204, 693 P.2d 789].)

Since *People* v. *Disbrow* (1976) 16 Cal.3d 101, 113 [127 Cal.Rptr. 360, 545 P.2d 272], is explicitly predicated upon article I, section 15 of the California Constitution it is unaffected by the provisions of article I, section 28(d). This case comes directly under *Disbrow*. We are compelled to apply it.

In *Ramona R.* v. *Superior Court, supra,* 37 Cal.3d 802, our Supreme Court recently held that "the language of that provision [Evidence Code section 940] is purposefully broad, and is meant to include within its reach judicial decisions relating to the privilege against self-incrimination." (P. 808.) *People* v. *Disbrow, supra,* 16 Cal.3d 101 is such a judicial decision relating to the privilege against self-incrimination and, as noted, expressly rejected the use of extrajudicial statements secured during custodial interrogation in violation of *Miranda.*

In our view *People* v. *Disbrow, supra,* 16 Cal.3d 101, has not been rendered a nullity by enactment of article I, section 28(d) of our California Constitution but in fact remains preserved as a statutory exemption to the provisions of that section.[3]

II*

. . . . . . . . . . . . . . . . . . . . .

---

[3]In *People* v. *Jacobs* (1984) 158 Cal.App.3d 740 [204 Cal.Rptr. 849], the court made a similar determination as to the use of a defendant's pre- and postarrest silence during cross-examination.

*See footnote, *ante,* page 889.

CONCLUSION

The judgment is reversed.

Blease, J., concurred.

**EVANS, Acting P. J.**—I dissent. My disagreement with the majority opinion is directed to the conclusion that the use of a "non-*Mirandized*" statement for purposes of impeachment is reversible error. I view the essence of the majority conclusion, that use of a non-*Mirandized* statement falls within the statutory privilege exception to California Constitution, article I, section 28, subdivision (d), and survives the enactment of Proposition 8, as totally unsupportable in reason or law.

California Constitution, article I, section 28, subdivision (d),[1] is couched in clear, concise, unambiguous, and direct language. It states, "Right to Truth-in-Evidence. Except as provided by statute hereafter enacted by a two-thirds vote of the membership in each house of the Legislature, relevant evidence shall not be excluded in any criminal proceeding, including pretrial and post conviction motions and hearings, or in any trial or hearing of a juvenile for a criminal offense, whether heard in juvenile or adult court. Nothing in this section shall affect any existing statutory rule of evidence relating to privilege or hearsay, or Evidence Code, Sections 352, 782 or 1103. Nothing in this section shall affect any existing statutory or constitutional right of the press." The statutory privileges referred to in subdivision (d) are found in Evidence Code sections 930 and 940. Section 930 dealing with compelled testimony is not implicated in the proceeding under consideration. Section 940 forms the basis for the conclusion of the majority opinion. That section provides, "To the extent that such privilege exists under the Constitution of the United States or the State of California, a person has a privilege to refuse to disclose any matter that may tend to incriminate him."

Although section 940 appears to be a straightforward privilege, limited to incriminating evidence, the California Supreme Court in *People* v. *Disbrow* (1976) 16 Cal.3d 101 [127 Cal.Rptr. 360, 545 P.2d 272], fearful that the federal constitutional standard for the introduction of relevant evidence enunciated in *Harris* v. *New York* (1971) 401 U.S. 222 [28 L.Ed.2d 1, 91 S.Ct. 643], would encourage police misconduct, rejected *Harris* on state constitutional grounds finding that California Constitution, article I, section 15, protection against self-incrimination includes impeachment, and over-

---

[1] All further references to this constitutional provision will be directed to section 28, subdivision (d), of article I of the California Constitution, unless otherwise indicated.

ruled *People* v. *Nudd* (1974) 12 Cal.3d 204, 208 [115 Cal.Rptr. 372, 524 P.2d 844], which had previously been decided consistent with *Harris. (Id.,* at p. 113.)

In my view, the provisions of article I, section 28, subdivision (d), enacted by the voters as Proposition 8, constitutionally reestablished the federal standard as the basis for the introduction of relevant evidence, and effectively overruled that portion of *Disbrow* dealing with impeachment.

In part I arrive at that conclusion after examination of available evidence relative to the intent of the voters. Prior to the initiative election, Proposition 8 received widespread publicity; newspaper, radio, and television editorials focused on the provisions, and extensive public debate followed describing the various aspects and effects of the constitutional amendment. The voters were provided an election pamphlet containing the title and the summary prepared by the Attorney General; a detailed analysis was also prepared and made available by the legislative analyst.

The legislative analyst pointed out that under California decisional authority, certain evidence was not "permitted to be presented in a criminal trial or hearing." The analysis went on to advise that the measure would change that and permit all relevant evidence that did not violate federal constitutional standards.

The Attorney General's argument in favor of the ballot measure pointed out that "higher courts of this state have created additional rights for the criminally accused and placed more restrictions on law enforcement officers." His statement further advised "This proposition will overcome some of the adverse decisions by our higher courts."

In a judicial review of an amendment to the organic law of California, we should not likely presume that voters were unaware of the consequences of their action in approving Proposition 8. Rather, we should assume that in approving the constitutional amendment, the voters voted intelligently and considered each aspect of the law which was supplied to them for consideration. (*Amador Valley Joint Union High Sch. Dist.* v. *State Bd. of Equalization* (1978) 22 Cal.3d 208, 243-244 [149 Cal.Rptr. 239, 583 P.2d 1281].)

In this instance, it seems clear to me the voters intended to curtail the sometime practice of the higher California courts of interpreting California constitutional provisions as additional restrictions on the use of evidence in criminal prosecutions.

The Supreme Court did that in *People* v. *Disbrow, supra,* 16 Cal.3d 101, and expressly rejected the United States Supreme Court decision in *Harris* v. *New York, supra,* 401 U.S. 222 [28 L.Ed.2d 1]; it held that "the privilege against self-incrimination of article I, section 15, of the California Constitution precludes use by the prosecution of any extrajudicial statement by the defendant, whether inculpatory or exculpatory, either as affirmative evidence or for purposes of impeachment, obtained during custodial interrogation in violation of the standards declared in *Miranda* and its California progeny. Accordingly, we overrule *Nudd* and declare that *Harris* is not persuasive . . . in California." (16 Cal.3d at p. 113.) It is interesting to note that in *People* v. *Nudd, supra,* a 1974 case, in a four-to-three decision, the majority of the then Supreme Court adopted the rationale of the *Harris* case as falling within the ambit of both the California Constitution as well as the United States Constitution. (12 Cal.3d 204.) In *Harris* v. *New York, supra,* the United States Supreme Court, in concluding that the use of "non-*Mirandized*" statements for purposes of impeaching a defendant under cross-examination is not violative of the constitutional provisions against self-incrimination, stated that "Every criminal defendant is privileged to testify in his own defense, or to refuse to do so. But that privilege cannot be construed to include the right to commit perjury. [Citations.] Having voluntarily taken the stand, petitioner was under an obligation to speak truthfully and accurately, and the prosecution here did no more than utilize the traditional truth-testing devices of the adversary process. Had inconsistent statements been made by the accused to some third person, it could hardly be contended that the conflict could not be laid before the jury by way of cross-examination and impeachment.

"The shield provided by *Miranda* cannot be perverted into a license to use perjury by way of a defense, free from the risk of confrontation with prior inconsistent utterances. We hold, therefore, that petitioner's credibility was appropriately impeached by use of his earlier conflicting statements." (Fn. omitted; *id.,* 401 U.S. at pp. 225-226 [28 L.Ed.2d at pp. 4-5].)

Through Proposition 8, the federal standard for the admission of relevant evidence and particularly the conclusion and rationale of *Harris* on the use of non-*Mirandized* prior inconsistent statements for impeachment purposes has been reestablished as the California standard, and removed from California Constitution, article I, section 15, and Evidence Code section 940 the judicially decreed implication that impeachment was a part of the California constitutional protection against self-incrimination. Article I, section 15, appears to be couched in language not subject to judicial interpretation. It provides in pertinent part, "Persons may not . . . be compelled in a criminal cause to be a witness against themselves, . . ." It strains judicial

credulity to include the challenge to a witness' veracity as a part of the prohibition against compelled incrimination.

The evidence of prior inconsistent statements is relevant and does not violate any statutory privilege. Section 940 precludes only forced testimony that would incriminate. It, like article I, section 15, does not speak to impeachment.

Incriminate is defined in Webster's Third New International Dictionary as "to furnish evidence or proof of circumstances tending to show . . . guilt." ((1980) p. 1146, col. 1.) Impeach, on the other hand, is defined as "to challenge, impugn, or charge as having some . . . [bias] . . . not credible, [impeach] the accuracy of his memory." (*Id.*, p. 1132, col. 2.) More importantly, constitutional provisions adopted by the People are to be interpreted so as to effectuate the intent of the enactment. If the intent of such provision is clear from the language used, there is no room for judicial interpretation. (*Kaiser* v. *Hopkins* (1936) 6 Cal.2d 537, 538 [58 P.2d 1278]; *Board of Supervisors* v. *Lonergan* (1980) 27 Cal.3d 855 [167 Cal.Rptr. 820, 616 P.2d 802]; *Skivers* v. *State of California* (1970) 13 Cal.App.3d 652, 655 [91 Cal.Rptr. 707].) Subdivision (d) appears to be unambiguously clear in its provisions stating that "relevant evidence shall not be excluded in any criminal proceeding" unless barred by existing statutory rules pertaining among other things to privilege.

In this instance, the truthfulness of defendant's testimony is relevant. As the *Harris* court stated, the shield provided by *Miranda* cannot be perverted into a license to use perjury by way of defense, free from the risk of confrontation of prior inconsistent statements. Such statements do not incriminate; they merely challenge the defendant's veracity—the most relevant evidential course.

The majority opinion apparently chooses to ignore recent decisions of the California Supreme Court holding that the right to "Truth-in-Evidence" provisions of the California Constitution (Cal. Const., art. I, § 28, subd. (d)) abrogate California's independent exclusionary rule and the exclusion of evidence is not required unless its use would violate some provision of the federal Constitution or existing statutory privileges. (*In re Lance W.* (1985) 37 Cal.3d 873 [210 Cal.Rptr. 631, 694 P.2d 744]; *People* v. *Ruggles* (1985) 39 Cal.3d 1 [216 Cal.Rptr. 88, 702 P.2d 170].) The portion of *Disbrow*, which implicated impeachment of a defendant-witness into California Constitution, article I, section 15 (self-incrimination) in order to exclude the use of non-*Mirandized* statements for impeachment, as prohibited by *Harris*, was annulled by Proposition 8 (art. I, § 28, subd. (d)).

As a consequence, Evidence Code section 940 now speaks only to self-incrimination and does not include by implication impeachment. The privilege involved in this proceeding and referred to in article I, section 28, subdivision (d), is that privilege which protects against self-incrimination as specified in Evidence Code section 940. The effect of Proposition 8 on article I, section 15, limits the privilege against self-incrimination to just that.

I agree with the Supreme Court decisions in *In re Lance W., supra,* 37 Cal.3d 873, and *People* v. *Ruggles, supra,* 39 Cal.3d 1, and would conclude that article I, section 28, subdivision (d), of the California Constitution as enacted by the voters by Proposition 8 in 1982 reestablishes the federal rule as the California standard for the admission of relevant evidence in criminal proceedings.

I would affirm the judgment.