[No. B004336. Second Dist., Div. Four. Nov. 19, 1985.]

THE PEOPLE, Plaintiff and Respondent, v.
DARRELL LAMONT MARZETT et al., Defendants and Appellants.

## COUNSEL

Jeffrey L. Bear, under appointment by the Court of Appeal, Sommer & Bear, Paul R. Sommer and Frank Duncan for Defendants and Appellants.

John K. Van de Kamp, Attorney General, Robert F. Katz and John S. Harrel, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**FIELDS, J.**\*—Ernest McKinney and Darrell Lamont Marzett (appellants) have appealed their conviction of second degree murder (Pen. Code, § 187), and that appellant McKinney used a firearm in the course of the murder (Pen. Code, § 12022.5). Appellants were further convicted of attempted murder (Pen. Code, § 664/187), and that appellant McKinney was armed with and used a firearm with intent to inflict great bodily injury (Pen. Code, §§ 12022.5, 12022.7, and 12022, subd. (a)). Appellant McKinney was sentenced to state prison for a term of 26 years to life. Appellant Marzett was sentenced to state prison for a term of 16 years to life. Appellant Marzett contends:

1. The failure of trial counsel to make a motion for severance denied appellant adequate representation at trial.

2. The trial court erroneously failed to properly instruct the jury regarding the requisite intent to be an aider and an abettor.

3. The trial court erroneously failed to instruct the jury with CALJIC Nos. 3.10 or 3.16 and 3.11, 3.12, and 3.18.

4. The trial court erroneously failed to instruct the jury with CALJIC No. 8.72.

---

\*Assigned by the Chairperson of the Judicial Council.

5. Appellant was denied a fair trial due to juror number 10 falling asleep, and it was misconduct on the part of the prosecutor for failing to call the fact to the attention of the trial court.

Appellant Marzett has also attacked trial counsel's competence by means of a writ of habeas corpus. We previously ordered the writ to be considered concurrently with this appeal.

Appellant McKinney contends:

1. Appellant was deprived of a fair trial, where the prosecutor informs the court that on occasion a juror fell asleep.

2. The prosecutor was guilty of misconduct by failing to inform the court and defense counsel on each occasion when he observed a juror asleep.

3. The trial court abused its discretion when it failed to grant a mistrial on its own motion based on the juror who had been asleep.

4. Appellant counsel's failure to request a mistrial based on the sleeping juror resulted in ineffective aid of counsel.

5. It was reversible error for the court not to instruct the jury *sua sponte* on the limited purpose for which appellant McKinney's statement should be considered.

6. It was reversible error in allowing the prosecution to use statements during cross-examination which had been obtained in violation of his *Miranda* rights.

7. It was error for the court to grant the motion *in limine* as to appellant Marzett and the prosecution which precluded appellant's counsel from fully presenting his defense.

FACTS

On July 22, 1983, at approximately 10 p.m., a neighborhood party was being held in the vicinity of 111th Street and Figueroa. Sean Taylor, James Hill, and Joseph Carter were on the street near the party when appellants, on foot, turned the corner of 110th Street. Appellant McKinney was allegedly armed with a pump-action 12-gauge shotgun and, after yelling "Crip Cuzz. This is Blood Area," advanced and fired in the direction of the group of people near and at the party. One victim was struck in the chest and died

at the scene. Three other victims were injured. Taylor and Hill later identified appellant McKinney as the shooter and Marzett as the other man.

The "Crips" and "Bloods" are gangs. The area of 110th and Figueroa is "Blood" territory. "Cuzz" means a person from a different neighborhood and can mean a warning.

Earlier that evening, before the shooting, Joseph Carter and James Hill saw appellant Marzett at a liquor store on 108th and Figueroa. Appellant Marzett was apparently harassed at the liquor store by James Hill and some others, all of whom were wearing "Blood" gang colors. Appellant was upset when he got back to a friend's house. He calmed down, then left on foot.

Appellant Marzett then telephoned appellant McKinney, and appellant McKinney went over to Marzett's house where he met appellant Marzett, Andre Wilson, Leroy Jones, and Jesse James Washington. They stayed at appellant Marzett's home and played tapes in McKinney's blue and white Regal car. The five then went for a ride down Figueroa in McKinney's car. McKinney allegedly knew nothing about Marzett's prior incident at the liquor store on Figueroa.

Appellant McKinney testified that Marzett said: "There's one of the guys," and told McKinney to turn the corner. According to McKinney, appellant Marzett and Andre Wilson got out of the car and Marzett asked McKinney for the keys.[1] Marzett went to the trunk of the car and then returned the keys.[2] McKinney further testified that he drove to a friend's house around the corner. While McKinney was at the friend's, he heard some shots. McKinney returned to the car and then saw appellant Marzett and Andre. According to appellant McKinney, appellant Marzett was holding the shotgun, and appellant McKinney told him to put it in the trunk, and they drove off.

About ten minutes after the shooting, James Hill saw appellant McKinney in his blue Regal with three others on 108th Street. He reported this to the police. Appellant McKinney parked the car and he and appellant Marzett, on foot, went back toward the scene of the crime. Hill recognized them and reported this to the police. Appellants McKinney and Marzett were arrested.

---

[1] Appellant Marzett did not testify.

[2] Appellant McKinney's trunk contained a 12-gauge shotgun which he was allegedly returning to its owner—Karl Josephat.

## I

██ Appellant Marzett contends that the trial court failed to properly instruct the jury regarding the requisite intent for an aider and an abettor. Despite the court's modification of CALJIC No. 3.01, appellant contends that the jury was not instructed as required by *People* v. *Beeman* (1984) 35 Cal.3d 547 [199 Cal.Rptr. 60, 674 P.2d 1318], which resolved a then existing conflict between the appellate courts as to whether or not an aider and an abettor must both know of the commission of a crime and have the intent to commit the crime. ██ The *Beeman* court held that: "[T]he aider and abettor must share the specific intent of the perpetrator. . . . [A]n aider and abettor will 'share' the perpetrator's specific intent when he or she knows the full extent of the perpetrator's criminal purpose and gives aid or encouragement with the intent or purpose of facilitating the perpetrator's commission of the crime." (*Id.,* at p. 560.)

*People* v. *Beeman, supra,* was decided on February 6, 1984. The following day, Marzett's attorney brought it to the court's attention, at which time the jury had already been instructed and had already heard closing argument. Appellant's attorney requested to reopen his motions pursuant to Penal Code sections 995 and 1118.1 because he had not been allowed to present the intent issues in those motions. Counsel further requested a mistrial.[3]

---

[3]Specifically, defense counsel stated: "I received what was for me a very pleasant surprise upon reading today's Los Angeles Times.

"I find that I was brighter than I knew when I argued in my 995 motion and my 1118.1 motion that an abettor must share the intent of the perpetrator of a crime, so now says our California Supreme Court in the six-to-one decision, People against Timothy Mark Beamon [*sic*], as yet uncited.

"And I don't have the court's opinion before me, only it's capsulation in the L.A. Times of today's date.

"I don't know of any procedure that would allow a reopening at this late date with the case almost to the jury, of a 995 motion, but I will so move that I be allowed to reopen and that it be reconsidered because it was expressly denied on the theory that People versus Green properly stated the law, rather than the law that I was asking for it to follow, announced in People versus Banks. Apparently, Beamon [*sic*] is like Banks.

"That takes us back to a cold transcript and the court did forget everything that's happened here, but looking at that transcript with this test, minus anything that has come forward in this trial, just what happened at the preliminary hearing in the People's case, very hard to find a shared intent based on that evidence.

"And if a shared intent is what is required, it would appear that the 995 is well taken as to count I, the homicide and as to whichever counts are the attempted murder counts.

"That's even stronger in a way. You could still find a second, I suppose, out of these facts, an act inherently dangerous to human life, possibly share intent there. But those attempted murder counts, those are specific intent to kill. That's very hard to deduce as to the nonshooter. That shared intent, from the record we have before us on the 995, if I'm even allowed to do this.

"Similarly, I would move for reconsideration of the 1118 motion that I made—or, 1118.1 at the end of People's case, again, before whatever qualifying evidence came forth in defendant McKinney, and I'd make the same argument, since the People's case to the jury

The motions were denied, but the court did allow argument to the jury to be reopened. Counsel argued that the case against appellant Marzett was tried on "the wrong theory of the law." Specifically, prior to *Beeman,* appellant would have been cross-examined based upon "a knowledge theory of aiding and abetting rather than a joint intent theory, and it made a difference to me and it played a part in my decision [on how to try the case.]" The court then instructed the jury with a modified version of CALJIC No. 3.01:

"A person aids and abets the commission of a crime if, with knowledge of the unlawful purpose of the perpetrator of the crime, <u>and with the same</u>

---

was rather similar to what was presented at the preliminary hearing, the fingerprint and Sean Taylor's observations plus their being together at the scene of the arrest being basically the threat.

"Finally, if those are to be denied in whole or in part, I'd move for a mistrial.

"I don't do this casually. Nobody would want to try a month-long trial again. But as to my client whose case is presented by the People as an aiding and abetting case, we tried the case on the wrong theory of the law.

"And there's no real way to fix it now. I'll state for the record that my knowledge that I would be denied a Banks instruction played a major part in my decision made really during the course of the People's case to keep my client off the stand.

"I will try to be intellectually honest. Not the only reason, but it did play a major part.

"I knew that he would be cross-examined on a knowledge theory of aiding and abetting rather than a joint intent theory, and it made a difference to me and it played a part in my decision.

"There's no way to fix it now, even by reopening testimony. If I called my client to the stand right now, he would not have the same impact that it had—would have had, had it been done in normal course of business.

"Similarly, I don't think that simply amending argument at this date can take away what's happened here. We have tried the case on the wrong theory, as to me. I won't make argument as to what it does to Mr. Duncan's case, although I suspect it does something.

"I'll let him say what he thinks it does to his case.

"I don't think you can just fix it by amending the instruction and reopening argument. We've gone far too far down the road for that, and I think the only fair thing to do is to mistry the case and start over.

"THE COURT: All right.

"Mr. Mackey or Mr. Duncan?

"MR. DUNCAN: Very briefly, the—obviously, Mr. McKinney's position was greatly deteriorated by being sandwiched between what amounted to two prosecutors.

"While it may not be the intent of the public defender, Mr. McCallister, on behalf of his client, to act as a prosecutor, that was the net result.

"Now, I'm inclined to agree with Mr. McCallister, had the new law been followed, his case would have been—would have been out because there was absolutely nothing as far as the evidence produced at the preliminary hearing to show that he—that is, a nonshooter who was simply present in any manner participated in the criminal intent of the shooter.

"Now, Mr. McKinney has been subject to probably as much, if not more, cross-examination of his witnesses by Mr. McCallister, and probably because of the—his position, that is, being a—supposedly a nonprosecutor.

"We have been harmed more by it than the prosecutor because everyone expects that from the prosecution. Whenever one defendant in effect goes after the other, it's extremely harmful.

"For that reason, I would move for a mistrial."

criminal intent he aids, promotes, encourages or instigates by act or advice the commission of such crime.

"[Mere presence at the scene of a crime which does not itself assist the commission of the crime does not amount to aiding and abetting.]

"[Mere knowledge that a crime is being committed and the failure to prevent it does not amount to aiding and abetting.]"

The underscored section indicates the modification.

■ We find that the instruction which was given was not erroneous, since it did inform the jury that an aider and abettor must share the perpetrator's intent. However, there remains the problem that the case was not tried on that theory and would have been tried differently had defense counsel known that *Beeman* was the law. Under the circumstances, appellant Marzett was denied his right to a fair trial, and his conviction must be reversed.

Because this error requires reversal of appellant Marzett's conviction, we do not discuss the other issues he has raised. Accordingly, appellant Marzett's petition for writ of habeas corpus becomes moot.

## II

■ Appellant McKinney contends that the court committed reversible error in allowing the prosecution to use incriminating statements during cross-examination which had been obtained from him by the police in violation of his *Miranda*[4] rights.

Appellant McKinney was called to testify on his own behalf. During cross-examination, the prosecutor played a tape of a conversation between appellant McKinney and Detective Simons. It was not contested that this taped conversation was in violation of appellant's *Miranda* rights. Notwithstanding that, and over appellant's objection, the trial court permitted the tape to be played to impeach his trial testimony. The court relied upon the enactment of article I, section 28, of the California Constitution (Prop. 8) to admit the tape for impeachment purposes.

The pertinent section of Proposition 8 provides:

---

[4]*Miranda* v. *Arizona* (1966) 384 U.S. 436 [16 L.Ed.2d 694, 86 S.Ct. 1602, 10 A.L.R.3d 974].

"Except as provided by statute hereafter enacted by a two-thirds vote of the membership in each house of the Legislature, relevant evidence shall not be excluded in any criminal proceeding, including pretrial and post conviction motions and hearings, or in any trial or hearing of a juvenile for a criminal offense, whether heard in juvenile or adult court. Nothing in this section shall affect any existing statutory rule of evidence relating to privilege or hearsay, or Evidence Code Sections 352, 782 or 1103. Nothing in this section shall affect any existing statutory or constitutional right of the press." (Cal. Const., art. I, § 28, subd. (d).)

In *People* v. *Disbrow* (1976) 16 Cal.3d 101, 113 [127 Cal.Rptr. 360, 545 P.2d 272], the California Supreme Court held that: "[T]he privilege against self-incrimination of article I, section 15, of the California Constitution precludes use by the prosecution of any extrajudicial statement by the defendant, whether inculpatory or exculpatory, either as affirmative evidence or for purposes of impeachment, obtained during custodial interrogation in violation of the standards declared in *Miranda* and its California progeny."

California Evidence Code section 940 provides: "To the extent that such privilege exists under the Constitution of the United States or the State of California, a person has a privilege to refuse to disclose any matter that may tend to incriminate him." Article I, section 28, subdivision (d), of the California Constitution provides in pertinent part: "[R]elevant evidence shall not be excluded in any criminal proceeding. . . . Nothing in this section shall affect any existing statutory rule of evidence relating to privilege or hearsay." Appellant McKinney argues that section 940 falls within the exception to section 28, subdivision (d), for "existing statutory rule of evidence relating to privilege."

We have two cases from the Second Appellate District that have addressed this issue. In *People* v. *Givans* (1985) 166 Cal.App.3d 793, 800 [212 Cal.Rptr. 762], Division Seven of the appellate court held that: "[T]he use of defendant's silence for purposes of impeaching his trial testimony violated his privilege against self-incrimination guaranteed by article I, section 15 of our state Constitution and incorporated into section 940 of the Evidence Code." In footnote 4, it specifically states: "The question whether article I, section 15 may be invoked to exclude evidence in a criminal proceeding in light of article I, section 28, subdivision (d) was answered in the affirmative in *Ramona R.* v. *Superior Court* (1985) 37 Cal.3d 802, 810 [210 Cal.Rptr. 204, 693 P.2d 789]."

In *People* v. *May* (1985) 172 Cal.App.3d 194, 198 [218 Cal.Rptr. 152], Division Six of the appellate court held that the *Disbrow, supra,* exclusionary rule did not survive article I, section 28, subdivision (d). *May* held that

Evidence Code section 940 "which relates only to substantive, not remedial, rights cannot be relied upon to save the exclusionary rule set forth in *Disbrow*." (*Id.*, at p. 200.) We believe that *Givans, supra,* is the more appropriate interpretation of the law.

In *Ramona R.* v. *Superior Court, supra,* 37 Cal.3d at page 808, the Supreme Court stated that the Attorney General, in the June 10, 1982 supplement to his Guide to Proposition 8 (1982) at pages 4-43, concedes that section 940 is a statutory rule of evidence relating to privilege deriving content from both the state and federal Constitutions. The Law Revision Commission comment to section 940 declares that: " 'Section 940 does not determine the scope of the privilege against self-incrimination; the scope of the privilege is determined by the pertinent provisions of the California and United States Constitutions as interpreted by the courts.' " (*Id.*, at p. 808.)

At least two other appellate districts agree with the *Givans, supra,* interpretation of *Ramona R., supra.* In *People* v. *Barrios* (1985) 166 Cal.App.3d 732, 743 [212 Cal.Rptr. 644], the court held that: "[T]he state constitutional privilege against self-incrimination has been determined by the [California] Supreme Court in *Disbrow* to preclude any use in a criminal proceeding of extrajudicial statements taken in violation of the *Miranda* rights of the defendant in that proceeding. And, by its own terms, Prop. 8 does not affect Evidence Code section 940." Also, in *People* v. *Clark* (1985) 171 Cal.App.3d 889, 894 [217 Cal.Rptr. 819], the court stated that since *Disbrow* "is explicitly predicated upon article I, section 15 of the California Constitution it is unaffected by the provisions of article I, section 28(d)." It appears to us that the dispositive cases on the *Disbrow* issue are *Barrios* and *Clark.*

Since this case comes directly under *Disbrow,* appellant McKinney's tape recorded conversation with Detective Simmons in violation of his *Miranda* rights should not have been admitted for impeachment, and his conviction must be reversed.

Because this error requires reversal of appellant McKinney's conviction, we do not discuss the other issues he has raised.

The judgments as to both appellants are reversed.

Woods, P. J., and Arguelles, J., concurred.

A petition for a rehearing was denied December 18, 1985.