Filed 9/25/24

<u>CERTIFIED</u> <u>FOR</u> <u>PUBLICATION</u>

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(San Joaquin)

----

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>  v.<br><br>JOSE MANUEL ZAVALA,<br><br>        Defendant and Appellant. | C098684<br><br>(Super. Ct. No. STK-CR-FE-2006-0010862) |

APPEAL from a judgment of the Superior Court of San Joaquin County, Xapuri Villapudua, Judge.  Affirmed.

Roberta Simon, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Julie A. Hokans and Galen N. Farris, Deputy Attorneys General, for Plaintiff and Respondent.


In March 2010, defendant Jose Manuel Zavala pled guilty to two counts of attempted murder and actively participating in a criminal street gang, and the trial court sentenced him to 22 years in state prison.  Approximately 12 years later, defendant filed a

1

petition for resentencing under Penal Code section 1172.6.[1] After an evidentiary hearing, in which the trial court admitted statements defendant made during a parole risk assessment interview and testimony from the parole hearing, the trial court denied the petition. On appeal, defendant contends the trial court prejudicially erred in admitting these statements and testimony made in support of his parole proceedings, as they should be subject to use immunity and were involuntary. We will affirm the order.

BACKGROUND

In the early morning of September 2002, a group of friends and family members left a bar, went to their friend Connie's house, and sat outside talking. Three of them were wearing red shirts, and one was also wearing red shoes. A car drove slowly by the group with its headlights on, turned around, drove back to the group with its headlights off, and stopped in front of them. When it stopped, shots were fired from the passenger side of the car. The friends ran toward a truck and a person in the car continued shooting. Two of the friends were injured by gunshots and a third was killed.

In the course of investigating the shooting, Detective Eduardo Rodriguez identified defendant as a "person of interest" with whom he wanted to speak. In 2006, acting as an informant on a different homicide, defendant spoke with Rodriguez about a number of shootings that occurred in 2002. During the discussions, defendant admitted he had been involved in the shooting at Connie's house. He told Rodriguez that that night, he, and his friend "Mono," were at a friend's house, and when they left, Mono got the gun out of the trunk of the car and put it near him in the front passenger seat.

---

[1] Undesignated statutory references are to the Penal Code. Effective June 30, 2022, the Legislature renumbered former section 1170.95 to section 1172.6. (Stats. 2022, ch. 58, § 10.) There were no substantive changes to the statute. Defendant filed this petition under former section 1170.95, but we will cite to the current section 1172.6.

Defendant and Mono were driving around and suddenly Mono pulled out the gun and started shooting.

Defendant explained he carried the gun in his car because another gang member, "Tiny," was trying to kill him. Defendant identified the weapon used in the shooting as a large military rifle. While he claimed he had not seen the victims, or what they were wearing, he acknowledged the shooting that night might have been related to the fact that the victims were wearing red, a rival gang color. He also acknowledged Mono would have thought he was shooting at rival gang members based on where they were. Defendant admitted he had been a gang member in 2002 and had been involved in a lot of the problems created by gang rivalries. He also discussed other incidents in which he was the victim of gang related violence related to the same location as the shooting.

Defendant pled guilty to two counts of attempted murder (§§ 664/187) and one count of criminal gang activity (§ 186.22, subd. (a)) and admitted a firearm use enhancement (§ 12022.53, subd. (b)). In accordance with the plea, the trial court sentenced defendant to a term of 22 years.

*Resentencing*

In 2022, defendant filed a petition under section 1172.6 seeking resentencing. The trial court appointed counsel and after a prima facie hearing, set the matter for an evidentiary hearing. The People filed a formal opposition and requested the trial court take judicial notice of the court's record, including the preliminary hearing transcript. The People also requested the court take judicial notice of a comprehensive risk assessment report prepared in December 2020 for an upcoming parole hearing and the certified transcript of the February 2021 parole hearing, as new and additional evidence. Defense counsel objected to the judicial notice request on the grounds the comprehensive risk assessment was hearsay and the parole hearing was hearsay and violated the Fifth and Sixth Amendments. The court admitted the parole hearing transcript and defendant's statements in the comprehensive risk assessment.

3

Before the comprehensive risk assessment interview, the evaluating psychologist advised defendant the interview was not confidential and he had a right not to participate, and defendant agreed to proceed. In the interview, defendant accepted full responsibility for his role in the crime. He reported his fellow gang members, whom he viewed as friends, wanted to kill him because he had informed on another gang member. He became friends with a 16-year-old and made it his " 'mission' " to kill the person who had targeted him. He used the gun, and his young friend, for protection. The morning of the shooting, he and his friend were driving around. His friend said he did not want to go home with a fully loaded gun, so he " 'unloaded the gun at a group of people and that was it.' " Defendant stated he was the driver of the car, and his friend was the shooter.

At the parole hearing, defendant was represented by counsel and again admitted he was involved in gangs at the time of the shooting and took full responsibility for everything that happened that morning. He testified he was at war with his own gang, because they had targeted him for informing on a fellow gang member. Although he was not the shooter, he was the "mastermind" and manipulated people to fight his former friends. Defendant acquired the gun and found a younger friend to ride with him to find his "enemies to go shoot them down." He had his younger friend possess the gun, because he did not want to get in trouble. The pair drove around with the gun in the car for about a day and a half, looking for defendant's enemies. Defendant claimed he did not plan to shoot at the victims that night, rather his whole purpose was to find the fellow gang member who had targeted him.

The trial court found defendant's statements to the detective, the parole board, and in the comprehensive risk assessment demonstrated he had an intent to kill. He admitted he was the mastermind, and that the shooting would not have happened without him. He recruited a minor and procured the gun. He and the minor spent a day and a half, including the morning of the shooting, driving around with a loaded rifle looking to kill a specific person. The trial court found beyond a reasonable doubt defendant was guilty of

4

aiding and abetting the attempted murder, had the intent to kill, and his actions showed a reckless indifference to human life. As a result, the trial court denied the petition for resentencing.

DISCUSSION

Defendant contends the trial court prejudicially erred in admitting his statements from the comprehensive risk assessment and his self-incriminating testimony from the parole suitability hearing at the evidentiary hearing on his section 1172.6 resentencing petition. He argues that statements made in preparation for, and testimony at, a parole hearing: 1) should be granted use immunity under a judicially created doctrine; and 2) such statements are involuntary, because of the coercive nature of parole hearings.

*Legal Background and Standard of Review*

The Legislature enacted what is now section 1172.6 and simultaneously amended sections 188 and 189 to eliminate criminal liability for murder, attempted murder, and manslaughter absent a showing of the defendant's personal intent. (§§ 188, 189, 1172.6, subd. (a).) A conviction for these crimes now requires proof that the defendant: (1) was the actual killer; (2) directly aided and abetted the actual killer while acting with the intent to kill; or (3) was a major participant in a felony who acted with reckless indifference to the value of human life. (§§ 188, 189; *People v. Duran* (2022) 84 Cal.App.5th 920, 927 (*Duran*).) "[S]ection 1172.6 is the statutory mechanism for determining whether to retroactively vacate a final murder, attempted murder, or manslaughter conviction that does not comply with the new, narrower definitions." (*Duran*, at p. 927.) After a defendant files a petition alleging entitlement to relief, and makes a prima facie showing of such entitlement (§ 1172.6, subds. (a) & (b)(1)(A)), "then the court must in most cases convene an evidentiary hearing where the People bear the burden of establishing beyond a reasonable doubt that the defendant is guilty of the pertinent crime under the new, narrower definitions. (§ 1172.6, subds. (c) & (d).)" (*Duran*, at p. 927.) At that evidentiary hearing, the court may consider admissible

5

evidence admitted at any prior hearing or trial and "new or additional evidence." (§ 1172.6, subd. (d)(3).) If the People do not meet their burden of proof, the conviction must be vacated, and the defendant resentenced. (§ 1172.6, subd. (d)(3); *Duran*, at p. 927.)

It is well settled that a defendant's statements in a parole risk assessment report and testimony at a parole hearing fall within the ambit of " 'new or additional evidence.' " (*People v. Mitchell* (2022) 81 Cal.App.5th 575, 586 (*Mitchell*); *People v. Myles* (2021) 69 Cal.App.5th 698, 703 (*Myles*).) Claims about the erroneous admission of evidence are usually reviewed for an abuse of discretion. (*Duran*, *supra*, 84 Cal.App.5th at pp. 927-928.) However, "[w]hether use immunity exists and whether a statement is involuntary within the meaning of due process are questions of law we review de novo. (*Haworth v. Superior Court* (2010) 50 Cal.4th 372, 383, fn. 8 [questions of law on undisputed facts]; *People v. McCurdy* (2014) 59 Cal.4th 1063, 1086 [involuntariness].)" (*Id.* at p. 928.)

*Forfeiture*

Preliminarily, the People argue defendant forfeited this claim by failing to object on the specific grounds that the statements and testimony were involuntary or entitled to use immunity. Anticipating this claim, defendant argues if we find forfeiture, his trial counsel was ineffective. In light of defendant's claim of ineffective assistance of counsel, we will exercise our discretion to reach the merits in lieu of addressing defendant's ineffective assistance claim.[2] (See *People v. Williams* (1998) 17 Cal.4th 148, 161, fn. 6

---

[2] At the resentencing hearing, the People's response to defendant's objection cited cases that reject the claim that this type of evidence is subject to use immunity or is involuntary. Thus, the record reflects that both the People and the court were aware of the specific argument. The People had the opportunity to establish the evidence's admissibility, and the court was able to make an informed ruling. Therefore, the purpose of requiring an objection so the issue could be raised and considered was served in this

6

[an appellate court has authority to reach a forfeited claim]; *People v. Crittenden* (1994) 9 Cal.4th 83, 146 [reviewing court may exercise discretion to consider forfeited claims to forestall ineffective assistance of counsel arguments].)

*Use Immunity*

We turn now to defendant's claim that his statements in preparation for, and testimony at, the parole hearing should be granted use immunity under the reasoning of *People v. Coleman* (1975) 13 Cal.3d 867 (*Coleman*) and related authorities. We agree with the other Courts of Appeal that have addressed this issue and conclude that *Coleman* use immunity should not be extended to bar the use of a defendant's statements in a comprehensive risk assessment and testimony at a parole hearing in a later evidentiary hearing held under section 1172.6. (*Duran*, *supra*, 84 Cal.App.5th at pp. 930-932; *Mitchell*, *supra*, 81 Cal.App.5th at pp. 586-590; *People v. Anderson* (2022) 78 Cal.App.5th 81, 93 (*Anderson*); *Myles*, *supra*, 69 Cal.App.5th at pp. 705-706.)

In *Coleman*, the California Supreme Court held that a defendant's testimony at a probation revocation proceeding was inadmissible against him at a later trial to prove guilt on the related criminal charges. (*Coleman*, *supra*, 13 Cal.3d at pp. 889-890.) The court reasoned that a defendant should not be forced to choose between the privilege against self-incrimination at trial and the right to be heard at a probation revocation hearing. (*Id*. at p. 878.) *Coleman* expressed its holding in terms of a judicially created exclusionary rule (*id.* at p. 889), however, later cases have treated *Coleman* as creating a limited species of use immunity grounded in California's constitutional guarantee against self-incrimination. (See *Ramona R. v. Superior Court* (1985) 37 Cal.3d 802, 808-809.) Whether considered a judicially devised exclusionary rule or a type of use immunity, the basis for the decisions remains the same two policies that underlie the privilege against

case. (See *People v. Partida* (2005) 37 Cal.4th 428, 434-435; *People v. Williams* (1988) 44 Cal.3d 883, 906.)

self-incrimination: first, the policy which requires the state to carry its burden of proving guilt without the defendant's compelled personal assistance; and second, the policy against subjecting a defendant to the " 'cruel trilemma of self-accusation, perjury or contempt.' " (*Coleman*, at p. 878; *id.* at pp. 875-876; *Ramona R.*, at pp. 809-810.)

As defendant correctly notes, the rule established in *Coleman* has been extended to contexts other than probation hearings, to preclude the prosecution's use of a defendant's statements as substantive evidence of guilt when one constitutional right is pitted against another. (See, e.g., *People v. Ledesma* (2006) 39 Cal.4th 641, 691-694 [privileged disclosures in habeas corpus proceeding based on ineffective assistance of counsel did not waive attorney-client privilege for purpose of retrial]; *Ramona R. v. Superior Court, supra*, 37 Cal.3d at pp. 806-811 [statements made by a minor to a probation officer and during a fitness hearing are inadmissible as substantive evidence against minor at subsequent trial]; *People v. Knight* (2015) 239 Cal.App.4th 1, 5-8 [statements made in support of motion to substitute appointed counsel are subject to use immunity in subsequent proceedings]; *Baqleh v. Superior Court* (2002) 100 Cal.App.4th 478, 498-503 [statements made during a court-compelled mental examination cannot be used in a subsequent trial].)[3] Despite this expansion, the reasoning underlying those cases expanding *Coleman* use immunity to those additional contexts remains "limited to situations where a defendant's prior statements might be later used against him *in a manner that offends the privilege against self-incrimination.*" (*Duran*, *supra*, 84 Cal.App.5th at p. 929; see also, *People v. Ledesma*, *supra*, 39 Cal.4th at pp. 692, 694-

---

[3]     Defendant also cites to *In re Mark A*. (2007) 156 Cal.App.4th 1124, 1136-1142, which addresses the propriety of the juvenile court relying on a Welfare and Institutions Code use immunity statute to compel testimony of a parent over the parent's assertion of Fifth Amendment rights against self-incrimination. *Mark A*. does not, as in this case, involve the application of *Coleman* to preclude use of a defendant's statements in subsequent proceedings, requiring a defendant to choose between competing interests. (*Mark A.,* at pp. 1128-1129.)

695 [*Coleman* and its progeny are cases in which the courts have granted use immunity when "it would be unfair to require the defendant to choose between maintaining a privilege and asserting other important rights."].)  Defendant makes no claim of privilege other than his privilege against self-incrimination.  Thus, the authorities on which defendant relies require he demonstrate he had a constitutional privilege against self-incrimination in his section 1172.6 resentencing hearing in order to be entitled to *Coleman* use immunity.  (*Anderson*, *supra*, 78 Cal.App.5th at p. 93.)  He has not met this burden.

"The Fifth Amendment privilege against self-incrimination protects persons from being compelled by ' "governmental coercion" ' to serve as witnesses against themselves in ' "any *criminal* case." ' " (*Myles*, *supra*, 69 Cal.App.5th at p. 705.)  "By its plain text, the privilege applies only during a 'criminal case' or 'cause.' [Citations.]  Once a defendant's 'sentence has been fixed and the judgment of conviction has become final,' the 'general rule' is that 'there can be no further incrimination' and hence 'no basis for the assertion of the privilege.' " (*Duran*, *supra*, 84 Cal.App.5th at p. 930; *Anderson*, *supra*, 78 Cal.App.5th at p. 93.)

The section 1172.6 evidentiary hearing is not a criminal prosecution, subsequent retrial, or a new sentencing.  (*Mitchell*, *supra*, 81 Cal.App.5th at p. 588; *Duran*, *supra*, 84 Cal.App.5th at p. 930.)  Rather, it is a postconviction proceeding based on an act of lenity by the Legislature.  (*Myles*, *supra*, 69 Cal.App.5th at pp. 705-706.)  "Because a sentence modification under section [1172.6] is an act of lenity and not a criminal trial, the wrongful admission of evidence does not implicate defendant's constitutional rights under the Fifth Amendment." (*Id.* at p. 706.)  Further, during the hearing, the final judgment of conviction remains intact.  (*Duran,* at p. 931.)  "This is no doubt why the panoply of rights that attach at trial do not apply during a section 1172.6 evidentiary hearing, such as the right to a jury trial or the protection against double jeopardy. (*Mitchell*, *supra*, 81 Cal.App.5th at pp. 588-589 [collecting cases].)  As a result, use of a

9

defendant's prior statements during such an evidentiary hearing does not implicate the privilege against self-incrimination, and *Coleman*'s core rationale—and hence its holding—is not implicated." (*Duran*, at p. 931; *contra*, *Mitchell, supra,* 81 Cal.App.5th at pp. 604-605 (dis. opn. of Stratton, J.).)

*Involuntary Statements and Testimony*

Relatedly, defendant argues parole hearings are coercive in nature, therefore his statements in the comprehensive risk assessment and testimony at the parole hearing were involuntary. He claims that because an inmate's insight into his commitment offense is such an important factor in determining his suitability for release, it is unfair to penalize an inmate's exercise of his right to be heard at the parole hearing by allowing the prosecution to use those statements "at a subsequent criminal proceeding focused on establishing the inmate's criminal liability for that same crime." Otherwise, he claims, the inmate is forced to choose between their right to be free from self-incrimination and the possibility of release on parole. We reject this argument.

Generally, when faced with a claim of involuntary incriminating statements, a reviewing court " ' " 'must examine the uncontradicted facts surrounding the making of the statements to determine independently whether the prosecution met its burden and proved that the statements were voluntarily given without previous inducement, intimidation or threat.' " ' " (*People v. McWhorter* (2009) 47 Cal.4th 318, 346.) In doing so, we " ' " 'accept [the] version of events which is most favorable to the People, to the extent that it is supported by the record.' " ' " (*Ibid.*)

At a parole hearing, "[a] prisoner may refuse to discuss the facts of the crime in which instance a decision shall be made based on the other information available and the refusal shall not be held against the prisoner." (Cal. Code Regs., tit. 15, § 2236; see § 5011, subd. (b).) Nor can parole "be conditioned on admission of guilt to a certain version of the crime." (*Myles*, *supra*, 69 Cal.App.5th at p. 706; § 5011, subd. (b); Cal. Code Regs., tit. 15, § 2236.) While a parole hearing offers the prisoner the right to speak

on their own behalf, the rules establish there is no requirement or compulsion that they do so, or that they admit guilt to a certain version of the crime as a condition of a parole grant. Standing alone, a defendant's right to speak on their own behalf at a parole hearing cannot support a conclusion that parole hearing testimony was compelled or involuntary.

Defendant makes no argument that there is anything more to support the claim that his participation in the risk assessment and testimony at the parole hearing was compelled, and the record does not support such a claim. Defendant was advised that he did not have to participate in the comprehensive risk assessment examination. Although the parole hearing transcripts do not reflect whether defendant was advised of his right not to discuss his commitment offense, defendant was represented by counsel at the hearing. That defendant may have had an incentive to admit having committed the offenses of conviction does not suggest his will was overborne by official coercion, such that his statements were involuntary.

Further, as explained earlier, the hearing under section 1172.6 does not implicate a defendant's Fifth Amendment rights, since a sentence modification proceeding under the statute is an act of lenity and not a criminal trial. (*Myles*, *supra*, 69 Cal.App.5th at p. 706.) Thus, defendant was not forced to choose between the possibility of release on parole and his right to be free from self-incrimination. On this record, we cannot find defendant's statements and testimony were involuntary.

We recognize the fact that a defendant may face various pressures or competing incentives at a parole hearing. Thus, there may be case-specific circumstances that warrant a closer review to determine if such incentives rise to the level of coercion rendering parole hearing testimony involuntary. Defendant has not argued that any case-specific facts warrant such a conclusion here. Instead, he urges us to reject the weight of published authority on this issue in order to hold that the mere fact that his statements and testimony were given in the context of a parole hearing should justify a finding that they were involuntary. We decline to do so and instead conclude that, on this record,

11

defendant has not shown that either his statements in the comprehensive risk assessment or his parole hearing testimony were involuntary or coerced, such that they should have been excluded as inadmissible at the time of the evidentiary hearing on his section 1172.6 petition.

We join the other courts that have considered this issue and hold that *Coleman's* use immunity does not extend to exclude defendant's statements in preparation for, and testimony at, the parole hearing from the section 1172.6 evidentiary hearing.

DISPOSITION

The order is affirmed.

/s/_____<br>WISEMAN, J.*

We concur:

/s/_____
EARL, P. J.

/s/_____
DUARTE, J.

---

\* Retired Associate Justice of the Court of Appeal, Fifth Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.