Filed 11/18/24  P. v. Kishor CA3

## NOT TO BE PUBLISHED

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE, | C099684 |
| Plaintiff and Respondent, | (Super. Ct. No. 98F01523) |
| v. | |
| CHANDRA KISHOR, | |
| Defendant and Appellant. | |

In 1999, defendant Chandra Kishor pleaded no contest to attempted murder and robbery.  After an evidentiary hearing, the trial court denied his petition for resentencing under Penal Code section 1172.6.[1]  On appeal, Kishor challenges the trial court's consideration of his admissions at a parole suitability hearing and in a comprehensive risk assessment report.  He additionally asserts that insufficient evidence supports the trial court's finding that he is guilty beyond a reasonable doubt of attempted murder as a direct aider and abettor.  We will affirm.

---

[1]     Undesignated statutory references are to the Penal Code.  Effective June 30, 2022, the Legislature renumbered former section 1170.95 to section 1172.6.  (Stats. 2022, ch. 58, § 10.)  Kishor filed this petition under former section 1170.95, but we will cite to the current section 1172.6.

1

I.

The amended information charged Kishor and three codefendants with conspiracy to commit murder, robbery and carjacking, burglary, robbery, mayhem, and attempted murder in connection with a violent attack on Kishor's wife in her home.

Kishor pleaded no contest to robbery and attempted murder pursuant to *People v. West* (1970) 3 Cal.3d 595. (§§ 211, 664, 187, subd. (a).) At the change-of-plea hearing, the prosecutor recited a factual basis for the plea: In January 1998, Kishor's codefendants entered the victim's home and "proceeded to attempt to drown her, smother her with a rag soaked in bleach, doused her in bleach and attempted to set her on fire, struck her repeatedly and stabbed her twice in the back. [¶] In addition, upon entry of these three co-defendants to the residence, they demanded jewelry . . . and money from the victim . . . and ultimately after the victim was attacked by these three co-defendants, her automobile was stolen from inside her attached garage. [¶] During the investigation of the case, it was determined that [Kishor] . . . enlisted the aid of these three individuals for the specific purpose of having them attack and kill his estranged wife [the victim] and to rob her." The prosecutor further stated his "understanding that the remaining co-defendants . . . if called to testify, would indicate that they were to be compensated with the property that they recovered from [the victim's] residence and the automobile, and they were exchanging the property that was to be stolen by force from the victim . . . . [¶] They were to be compensated for that money in exchange for killing her."

Defense counsel responded that his client had "always maintained that it was never his intent to elicit these individuals to kill his wife, but pursuant to [*People v. West*, *supra*, 3 Cal.3d 595], he understands that he really has no choice in—it is in his best interest to take this deal." Counsel further represented that he understood that the "co-defendants were all prepared to testify that they were directed to go to the residence to

kill the victim, correct, to kill her rather than rob her. The robbery was secondary to the killing . . . ."

The trial court accepted Kishor's plea and subsequently sentenced him to four years for the robbery plus life with the possibility of parole for the attempted murder.

II.

In 2019, Kishor filed a petition for resentencing under section 1172.6. The trial court initially denied the petition at the prima facie stage, but we reversed and remanded with directions that the court issue an order to show cause and hold an evidentiary hearing.

On remand, the prosecution asked the trial court to take judicial notice of the entire file in the case, including the complaint, information, abstract of judgment, probation report, transcript of Kishor's plea, and transcript of the imposition of judgment and sentencing. The prosecution also requested that the court consider excerpts from the transcript of Kishor's 2015 parole suitability hearing, a handwritten apology letter he had written to his wife, and a comprehensive risk assessment report prepared for the Board of Parole Hearings.

At the 2015 parole suitability hearing, while under oath, Kishor told the presiding commissioner that he was in prison "for attempting to kill my ex-wife." He stated: "I hired some people. I conspired with a couple of friends, my drinking buddies. They say, no don't worry about it man, we'll take care of it. I wanted to punish her, and I let them do what they want to do. I told them, go ahead." He admitted that he hired two people to kill his wife. He told them he wanted "to get rid of her because she's causing me a lot of trouble." Kishor said that he tried to kill his wife because he was a "selfish, self-centered, uncaring, ignorant alcoholic." He admitted that part of the plan was for him to have the children out of the house when the crime was committed.

The presiding commissioner read the following description of the crimes from the probation report into the record: "On 1/13/1998, officers responded to [the victim's]

home to investigate a home-invasion robbery. When interviewed, she indicated approximately 12:45 a.m. she heard someone knocking on the door. Her family, including her two children and 58-year-old father, had gone to bed. The victim observed the female codefendant, Jasmine (phonetic), standing on the front porch. When she opened the door, Jasmine indicated her car had broken down and that she needed to use the telephone. At that point, two men, Harmeet . . . and Balgeet . . . appeared and the three used force and forced their way into the home. Once inside, the two men began beating the victim's father. While one of the male[s] was cutting rope, the other began breaking furnishings including the lamps and television set. Jasmine (inaudible) [the victim's] purse. The trio made the two victims go to the bedroom in the back of the residence. The two victims were tied up. Jasmine's been going through [the victim's] jewelry while the two male suspects were looking for car keys. The male suspects then dragged [the victim] into the bathroom, filled the bathtub with cold water. They demanded that she give them the jewelry. However, she stated she did not have it anymore. One of the male suspects accused her of lying and hit her in the eye with his fists. He then made her get into the cold bathtub. They then dragged her into the living room. Hit the victim in the head with a bar. Harmeet soaked a towel with bleach and put it up her nose. He jumped on her back, held the towel over her face. Harmeet then poured bleach all over her body. Both male suspects attempted to open [the victim's] mouth to get her to try to drink the bleach. However, she spit the bleach out and acted . . . as if she lost consciousness. One of the men began lighting matches and attempted to set her on fire. When . . . that did not work, they taped her mouth shut. Balgeet proceeded to stab [the victim] twice in the back. The trio then stole the car, drove away. The victim's daughter came to her assistance and helped get the rope off. The victim then called 911. [The victim] had never seen the three suspects before, but she related that she was going through an ongoing bitter custody battle with Kishor for the last year, and he had previously threatened to make her life miserable, even threatened to kill her.

4

He had reportedly tried to strangle her in the past. She . . . claimed that Kishor knew her father was in the residence and that her father probably brought the jewelry they were looking for. Balgeet and Harmeet admitted guilt and implicated Kishor in devising the plan to break into the residence and requesting that [the victim] be killed. Mr. Kishor later admitted to sending the three to his ex-wife's residence."

Kishor stated that he had read this report and did not disagree with anything in it. He further agreed that was what happened. Kishor told one of the deputy commissioners that he "caused [his ex-wife] a lot of pain that she didn't deserve" and that he had "deep regrets for what happened."

Kishor's apology letter to his wife said: "What I did was horrible & wrong. You did not deserve that nor did the kids, nor your father. All the pains fear hurt suffering and losses I caused. I am very ashamed and deeply regret it. . . .[¶] If I could undo that night's horror, I would but I can't." He also wrote, "Fact that I hurt you cannot be changed. I am ashamed and deeply regret my action & poor choices. It will not happen again, I promise you sincerely."

In the comprehensive risk assessment report, the evaluator wrote that Kishor "described a series of frustrations in his relationship that led to his ultimate decision to have his wife killed." He was "venting these frustrations to his codefendants when the plan was hatched to kill her." The report stated that Kishor "has consistently described being intoxicated at the time he encouraged his co-defendants to kill his wife in retaliation."

Kishor objected to and moved to strike the change-of-plea hearing transcript, the sentencing transcript, the probation report, the parole suitability hearing transcript, his handwritten letter, and the comprehensive risk assessment report.

Kishor also presented the testimony of one of his codefendants, Harmeet Singh. On direct examination, Singh testified that Kishor told him that there was money and jewelry at his wife's house; Singh interpreted that statement to be an offer to rob the

house and take those items. About a week later, Singh and his codefendants went to the victim's house to commit the robbery. Singh testified that Kishor did not tell him to kill the victim. Singh did not see the victim get stabbed or have bleach poured on her.

On cross-examination, Singh was impeached by a statement he had made at a parole suitability hearing in which he admitted to pouring bleach on the victim to kill her. Singh was also confronted with a statement he made to a sheriff's detective that Kishor had co-planned the murder and told one of their codefendants to kill his wife. Singh testified that was what the detective wanted him to say.

Kishor also presented the transcripts of the two prior parole suitability hearings in which he chose not to make any statements. At the 2008 hearing, Kishor did not appear, and his counsel requested a postponement. After the Board of Parole Hearings stated it was willing to grant the request, Kishor stipulated that the hearing could be conducted in his absence. At the 2010 hearing, his defense attorney represented that Kishor did "not want to physically participate verbally in these proceedings for a variety of reasons, which were elucidated to me, which he feels it's in his best interest, since he is attempting to work in other legal arenas."

The trial court denied Kishor's section 1172.6 petition. The court first considered Kishor's motions to exclude evidence. The court agreed with Kishor that the sentencing transcript and probation report contained inadmissible hearsay. The court declined to strike the transcript of Kishor's change-of-plea hearing, concluding that it could consider defense counsel's statement that Kishor's codefendants were prepared to testify that Kishor directed them to kill his wife. And the court concluded that the parole suitability hearing transcripts, the risk assessment report, and Kishor's handwritten letter all were admissible.

Based on the evidence before it, the trial court found "beyond a reasonable doubt that defendant is guilty of attempted murder as a direct aider and abettor." It explained that the evidence showed that Kishor knew his codefendants intended to kill the victim;

6

that he wanted her killed; and that the codefendants were hired for that purpose. The evidence also demonstrated that Kishor intended to aid the killing of the victim and did in fact aid the attempted murder. The court further found that Kishor's own statements at his parole suitability hearing showed that he harbored the intent to kill. His unambiguous statement "to his codefendants to 'kill her and get rid of her' " left no question in the court's mind as to his mental state. The evidence thus established beyond a reasonable doubt that Kishor was guilty of attempted murder under a still-valid theory.

Kishor filed a timely notice of appeal.

DISCUSSION

On appeal, Kishor challenges the trial court's denial of his petition on two grounds. First, he contends that his admissions in the parole suitability hearing and comprehensive risk report were inadmissible at the evidentiary hearing. Second, he asserts that the evidence was insufficient to establish that he was guilty of attempted murder as a direct aider and abettor. We reject both contentions.

I.

Effective January 1, 2019, Senate Bill No. 1437 (2017-2018 Reg. Sess.) narrowed the scope of the felony-murder rule and eliminated the natural and probable consequences doctrine as a basis for murder liability. (*People v. Das* (2023) 96 Cal.App.5th 954, 959 (*Das*).) The Legislature adopted the law "to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life." (Stats. 2018, ch. 1015, § 1, subd. (f).) Among other things, the enactment amended section 188 to require that a principal convicted of murder "act with malice aforethought." (Stats. 2018, ch. 1015, § 2, subd. (a)(3).) It further provided that malice "shall not be imputed to a person based solely on his or her participation in a crime." (*Ibid.*) And it added a procedure, now codified in section 1172.6, to permit individuals

7

convicted of murder under prior law to request that their conviction be vacated and to be resentenced on any remaining counts. (Stats. 2018, ch. 1015, § 4; *Das*, at p. 959.)

In 2021, the Legislature adopted Senate Bill No. 775 (2021-2022 Reg. Sess.) to expressly allow those convicted of attempted murder under the natural and probable consequences doctrine to seek resentencing under section 1172.6. (Stats. 2021, ch. 551, § 2, subd. (a); *Das*, *supra*, 96 Cal.App.5th at p. 959.) The Legislature enacted the provision to clarify "that persons who were convicted of attempted murder or manslaughter under a theory of felony murder and the natural [and] probable consequences doctrine are permitted the same relief as those persons convicted of murder under the same theories." (Stats. 2021, ch. 551, § 1, subd. (a).) The law took effect on January 1, 2022. (*Das*, at p. 959.)

As amended (and as relevant here), section 1172.6 provides that a person convicted of attempted murder under the natural and probable consequences doctrine may file a petition to have his or her conviction vacated when: (1) the charges filed against the person allowed the prosecution to proceed on a theory of attempted murder under the natural and probable consequences doctrine; (2) the person was convicted of attempted murder after trial or accepted a guilty plea in lieu of a trial at which he or she could have been convicted of attempted murder; and (3) the person could not presently be convicted of attempted murder because of changes to section 188 made effective January 1, 2019. (§ 1172.6, subd. (a)(1)-(3).)

Upon the issuance of an order to show cause, the prosecution bears the burden to "prove, beyond a reasonable doubt, that the petitioner is guilty of murder or attempted murder under California law as amended by the changes to Section 188 or 189 made effective January 1, 2019." (§ 1172.6, subd. (d)(3).) With certain exceptions, admission of evidence at an evidentiary hearing under section 1172.6 is "governed by the Evidence Code." (*Ibid.*) "The prosecutor and the petitioner may also offer new or additional evidence to meet their respective burdens." (*Ibid.*) "If the prosecution fails to sustain its

8

burden of proof, the prior conviction, and any allegations and enhancements attached to the conviction, shall be vacated and the petitioner shall be resentenced on the remaining charges." (*Ibid.*)

The elements of "attempted murder [include] the specific intent to kill and the commission of a direct but ineffectual act toward accomplishing the intended killing." (*People v. Lee* (2003) 31 Cal.4th 613, 623.) "[T]o be guilty of attempted murder as an aider and abettor, a person must give aid or encouragement with knowledge of the direct perpetrator's intent to kill and with the purpose of facilitating the direct perpetrator's accomplishment of the intended killing—which means that the person guilty of attempted murder as an aider and abettor must intend to kill." (*Id.* at p. 624.)

Claims challenging the erroneous admission of evidence are ordinarily reviewed for abuse of discretion. (*People v. Zavala* (2024) 105 Cal.App.5th 366, 373, petn. for review pending, petn. filed Oct. 31, 2024.) But when, like here, the admissibility of evidence turns on a question of law, our review is de novo. (*Ibid.*)

II.

Invoking *People v. Coleman* (1975) 13 Cal.3d 867 (*Coleman*) and its progeny, Kishor contends that the trial court erred in admitting his parole suitability hearing testimony and the admissions he made in connection with the comprehensive risk assessment report. "In *Coleman*, the California Supreme Court held that a defendant's testimony at a probation revocation proceeding was inadmissible against him at a later trial to prove guilt on the related criminal charges. (*Coleman*, *supra*, 13 Cal.3d at pp. 889-890.) The court reasoned that a defendant should not be forced to choose between the privilege against self-incrimination at trial and the right to be heard at a probation revocation hearing. (*Id.* at p. 878.) *Coleman* expressed its holding in terms of a judicially created exclusionary rule (*id.* at p. 889)[;] however, later cases have treated *Coleman* as creating a limited species of use immunity grounded in California's constitutional guarantee against self-incrimination. (See *Ramona R. v. Superior Court*

9

(1985) 37 Cal.3d 802, 808-809.) Whether considered a judicially devised exclusionary rule or a type of use immunity, the basis for the decisions remains the same two policies that underlie the privilege against self-incrimination: first, the policy which requires the state to carry its burden of proving guilt without the defendant's compelled personal assistance; and second, the policy against subjecting a defendant to the ' "cruel trilemma of self-accusation, perjury or contempt." ' (*Coleman*, at p. 878; see *id.* at pp. 875-876; *Ramona R.*, at pp. 809-810.)" (*People v. Zavala*, *supra*, 105 Cal.App.5th at p. 374.)

Kishor acknowledges that Courts of Appeal have consistently declined to extend *Coleman*'s exclusionary rule to hearings held under section 1172.6; but he urges us to depart from their holdings and to follow the reasoning of the dissenting opinion in *People v. Mitchell* (2022) 81 Cal.App.5th 575, 602-605. We decline to do so. As this court and others have comprehensively explained, *Coleman*'s rationale is inapplicable to section 1172.6 hearings, which are postconviction proceedings based on an act of lenity by the Legislature. (*People v. Zavala*, *supra*, 105 Cal.App.5th at p. 376; *People v. Duran* (2022) 84 Cal.App.5th 920, 928-931; *People v. Mitchell*, *supra*, 81 Cal.App.5th at pp. 588-590; *People v. Anderson* (2022) 78 Cal.App.5th 81, 89-93; *People v. Myles* (2021) 69 Cal.App.5th 688, 704-706.)

Kishor argues that admitting this category of evidence is unfair, but such concerns can be addressed on a case-by-case basis. As one court observed, the "trial judge is ideally situated to determine whether the incentives at a specific parole hearing mesh with [the resentencing statute's] goal of aligning punishment with true culpability. When there are valid reasons to doubt the probity of a parole hearing statement, the trial judge can hear and appraise arguments in the case's context and accord the statement due weight. Trial judges are expert at evaluating—word by word—whom and what to believe in individual situations. No reason exists to preempt trial judges' particularized evaluation with our own blanket rule of exclusion." (*People v. Mitchell*, *supra*, 81 Cal.App.5th at p. 590.) In this case, as we discuss more fully below, we see no merit

to Kishor's challenge to the trial court's "particularized evaluation" of the facts before it. (*Ibid*.)

III.

Kishor's second contention on appeal is that the evidence was insufficient to find him guilty of attempted murder as a direct aider and abettor. In reviewing a trial court's finding that the prosecution has proven a defendant is guilty of attempted murder under current law, "[w]e review the trial judge's factfinding for substantial evidence." (*People v. Clements* (2022) 75 Cal.App.5th 276, 298.) "We ' "examine the entire record in the light most favorable to the judgment to determine whether it contains substantial evidence—that is, evidence that is reasonable, credible, and of solid value that would support a rational trier of fact in finding [the defendant guilty] beyond a reasonable doubt." ' [Citation.] Our job on review is different from the trial judge's job in deciding the petition. While the trial judge must review all the relevant evidence, evaluate and resolve contradictions, and make determinations as to credibility, all under the reasonable doubt standard, our job is to determine whether there is any substantial evidence, contradicted or uncontradicted, to support a rational fact finder's findings beyond a reasonable doubt." (*Ibid.*)

The People concede, and we agree, that the factual basis for Kishor's plea did not show that he admitted to aiding and abetting the attempted murder with the intent to kill. That is because Kishor pleaded under *People v. West*, *supra*, 3 Cal.3d 595, which allowed him to take advantage of a plea bargain while still asserting his innocence. (*People v. Rauen* (2011) 201 Cal.App.4th 421, 424.) The People also concede, and we also agree, that the trial court should not have considered defense counsel's statements at the change-of-plea hearing about how he expected witnesses to testify. That is because their testimony was hearsay. (§ 1172.6, subd. (d)(3); Evid. Code, § 1220.)

But Kishor's own words—at the parole suitability hearing, as recorded in the comprehensive risk assessment, and in his apology to the victim—provided substantial

11

evidence of Kishor's guilt.  In his testimony before the parole board, Kishor admitted under oath that he hired two people to kill his wife.  He agreed that his codefendants implicated him in devising the plan to break into his wife's home and that he requested that she be killed.  He said the plan included having the children come to his house at the time of the murder.  He stated that he did not disagree with anything in the detailed recitation of the facts of the crimes and specifically agreed that was what happened.  Kishor told the parole commissioner he caused his wife a lot of pain and had deep regrets for what happened.

In the comprehensive risk assessment report, Kishor described frustrations that led to "his ultimate decision to have his wife killed."  He repeatedly admitted to being part of the plan to kill her.

His handwritten apology letter to his wife admitted that he did something "horrible" and "wrong."  He admitted that he hurt her and said that he was ashamed of his actions and "poor choices."

All of this evidence was sufficient to support the trial court's finding that Kishor was guilty beyond a reasonable doubt.  Kishor admitted that he hired others to kill his wife, agreed to a factual recitation that he did exactly that, and then wrote an apology letter that provided further circumstantial evidence of his guilt.  These facts demonstrated Kishor's specific intent to kill his wife and the commission of a direct but ineffectual act toward accomplishing the intended killing.  (*People v. Lee*, *supra*, 31 Cal.4th at p. 623.)  The evidence was sufficient to establish that he directly aided and abetted the attempted murder of his wife.

Kishor challenges the reliability of the inculpatory evidence by pointing to his counsel's statement at the change-of-plea hearing that he maintained his innocence, Singh's testimony at the evidentiary hearing, and the fact that Kishor said nothing at prior parole suitability hearings.  But the trial court heard and saw all the evidence and was in the best position to weigh it and to assess its credibility.  (*People v. Mitchell*, *supra*,

12

81 Cal.App.5th at p. 590.) For example, the trial court was entitled to discount Singh's exculpatory testimony at the evidentiary hearing in the face of his prior statement to law enforcement that Kishor had directed Singh to kill Kishor's wife. And we see nothing in the record that suggests that the circumstances of his parole suitability hearing or the risk assessment interview were so inherently coercive or untrustworthy that no reasonable trier of fact could have credited the statements he made in them. On the record before us, we have no difficulty concluding that substantial evidence supports the trial court's finding.

## DISPOSITION

The judgment is affirmed.


/s/
FEINBERG, J.



We concur:



/s/
KRAUSE, Acting P. J.



/s/
BOULWARE EURIE, J.