Filed 4/7/25

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE, | B332704 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. A384310) |
| v. | |
| JOSE GELITO RODRIGUEZ, | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Craig Richman, Judge. Affirmed.

Joanna McKim, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Charles S. Lee and Michael C. Keller, Deputy Attorneys General, for Plaintiff and Respondent.

————————————

Jose Gelito Rodriguez appeals from an order denying his petition for resentencing under Penal Code section 1172.6 after an evidentiary hearing.[1]  Rodriguez contends the trial court erred in admitting statements he made in a letter to the Board of Parole Hearings in 2011, and statements he made in connection with a 2016 Comprehensive Risk Assessment evaluating his suitability for parole.  We find no error and affirm.

**FACTUAL AND PROCEDURAL BACKGROUND**

On October 24, 1982, Rodriguez and three other individuals were driving down Hollywood Boulevard.  In two separate incidents, shots fired from the car injured Don Hill and killed Kirk Bickford.  Rodriguez and Sergio Martinez were jointly charged with assault with a deadly weapon on Don Hill (§ 245, subd. (a)), and the murder of Kirk Bickford (§ 187, subd. (a)).  As to each offense, Rodriguez was charged with personal use of a firearm (§ 12022.5).

In 1984, Rodriguez pled guilty to second degree murder. Under the terms of the plea agreement, the People dismissed the firearm enhancements.  During the plea hearing, the prosecutor explained that the plea agreement was appropriate because no witnesses were available to independently identify Rodriguez as the shooter.  The prosecutor also noted that evidence at the preliminary hearing revealed Rodriguez was under the influence of phencyclidine (PCP) at the time of the crime, which, if

---

[1]     All further undesignated statutory references are to the Penal Code.

Effective June 30, 2022, section 1170.95 was renumbered to section 1172.6 with no change in text.  (Stats. 2022, ch. 58, § 10.) We refer to the law formerly codified at section 1170.95 as section 1172.6 for the remainder of this opinion.

2

admissible, may have entitled him to a voluntary intoxication defense, reducing any conviction to involuntary manslaughter. Rodriguez accepted the agreement and pled guilty. The trial court sentenced Rodriguez to 15 years to life for second degree murder.

## 2011 Letter to the Board of Parole Hearings (Board)

In February 2011, Rodriguez submitted a written statement to the Board "for consideration towards determination of parole suitability per CCR Sec. 2249."[2] Rodriguez offered the statement to explain his "current state of mind as it relates to any insight and remorse pertaining to the commitment offense and subsequent incarceration."

In the letter, Rodriguez accepted "full and unequivocal responsibility for [his] actions in this crime." He continued: "[T]here is no manner of explanation or heartfelt discussion that can excuse a crime such as this that has caused so much pain and suffering for so many people[,] i.e.[,] Mr. Kirk W. Bickford[.] I had no right to end his life, an act for which I am truly and deeply sorry for committing." Rodriguez further stated that Bickford was "someone[']s child, family and hope for the future, and it pains me daily knowing that I took that away from anyone."

The letter went on to address Rodriguez's criminal history as a juvenile, his growth and maturity during his nearly three decades of incarceration, and his record while incarcerated. Rodriguez further stated that by pleading guilty, "I . . . made it

---

[2]     California Code of Regulations, title 15, section 2249 gives prisoners the right to present relevant documents to the Board panel covering "any relevant matters such as mitigating circumstances, disputed facts[,] or release planning."

3

clear that [Bickford] died by my hand and I never denied that fact . . . ." Rodriguez declined to discuss any further details about the facts of his case "that were not proven in a court of law or plead[ed] guilty to . . . ."

***2016 Comprehensive Risk Assessment (Assessment)***

In 2016, Rodriguez underwent an assessment as part of a subsequent parole evaluation. The assessment was conducted by Dr. Jill Hobel, a licensed psychologist with the California Department of Corrections and Rehabilitation. Dr. Hobel interviewed Rodriguez in March 2016. Within one week of the interview, Dr. Hobel compiled a 15-page report based on her contemporaneous notes. The assessment report documented that Dr. Hobel informed Rodriguez at the outset of the assessment that "he had a right not to participate in the examination."

The report covered Rodriguez's psychosocial development from childhood and adolescence through adulthood, his criminal history, a clinical assessment, and risk considerations. Dr. Hobel transcribed Rodriguez's description of the commitment offense: "I was in a moving car with three friends. . . . We were driving and passersby started arguing with us. A guy came up, and I shot the gun. It grazed his ear. [¶] Then two blocks later there was an argument with another guy. As we drove past him, I shot at him, but didn't see him go down. I didn't hear him say anything, but my crimie (co-defendant) said he called us 'wetbacks.' I just reacted. I was not in my best state of mind [due to the PCP and beer]. We just left the scene and I was arrested two days later. I didn't know I killed him until the arrest."

Dr. Hobel observed that Rodriguez's description of the crime differed from the one he gave as part of a previous evaluation. She stated: "In his 2011 [assessment], [Rodriguez]

4

recalled a gun being fired on two occasions, but did not recall shooting at anybody. He only remembered the gun firing at those times. Thus, it appears he has accepted more responsibility for his role in the commitment offense, and possibly deepened his insight with more truth as a basis."

### *Resentencing Proceedings*

In July 2020, Rodriguez filed a petition for resentencing contending the People could not establish beyond a reasonable doubt that he was a principal in the murder. Relying on the prosecutor's statements during the plea hearing that no available witnesses identified Rodriguez as the shooter, and that Rodriguez's intoxication could potentially negate a finding of malice, Rodriguez argued he made a prima facie showing of eligibility for relief under section 1172.6.[3] The trial court appointed counsel to represent him. In October 2021, the People stipulated that Rodriguez had met his prima facie burden for resentencing relief. The trial court issued an order to show cause and set an evidentiary hearing.

In advance of the hearing, the People sought to admit five exhibits: the felony information, the plea transcript, the sentencing transcript, Rodriguez's 2011 letter to the Board, and the 2016 assessment report.

Rodriguez objected to the admission of his 2011 letter and the 2016 assessment report. He argued the 2016 assessment report contained multiple levels of hearsay, likely derived from other inadmissible hearsay sources such as the probation report, police reports, and witness statements to investigators.

---

[3] Rodriguez also sought resentencing "for reason(s) other than the new law of P.C. 1170.95" based on his good-time credit earnings. He does not raise this issue on appeal.

Rodriguez objected to his 2011 letter as unreliable hearsay, in relevant part because of the "inherently coercive nature" of parole hearings that pressured inmates to " 'accept responsibility' " for criminal misconduct.

In response, the People clarified that they sought to admit only an excerpt of the assessment report in which Dr. Hobel documented Rodriguez's description of the commitment offense. The People contended Rodriguez's statements were voluntary because, as with statements made directly to the parole board, he was not required to admit guilt during his assessment interview, and the parole board could not hold his refusal to admit guilt against him in determining his suitability for parole. (§ 5011; Cal. Code Regs., tit. 15, § 2236.) The People also argued that Rodriguez's statements were admissible under the party admissions and public records exceptions to the hearsay rule. In a supplemental brief, Rodriguez responded that neither hearsay exception applied and that he was pressured to make the inculpatory statements in the assessment report at Dr. Hobel's "prompting" to increase his chances of being granted parole. He requested that the court require Dr. Hobel to testify as to the accuracy and trustworthiness of the statements she documented in the assessment report.

In August 2022, the court held a hearing on the admissibility of Rodriguez's statements in his 2011 letter and the 2016 assessment report. Relying on *People v. Myles* (2021) 69 Cal.App.5th 688 (*Myles*) and *People v. Mitchell* (2022) 81 Cal.App.5th 575 (*Mitchell*), the court found Rodriguez's statements in the 2011 letter and the 2016 assessment report were admissible. It further found "no reason to doubt" the accuracy of Dr. Hobel's recording of Rodriguez's statements in the

6

assessment report, and rejected defense counsel's argument that the 2011 letter lacked foundation.  Finally, the court rejected Rodriguez's contention that his statements should be excluded because parole proceedings, in general, are inherently coercive.

In July 2023, a different judge conducted an evidentiary hearing on Rodriguez's petition under section 1172.6, subdivision (d)(3).  The court noted that it reviewed the People's exhibits and the probation report, which was referenced by the assessment report and had been "submitted as part of a request by Mr. Rodriguez acting in pro per for a resentence."

The People called Dr. Hobel as a lay witness.  Rodriguez objected.  Defense counsel argued that *Myles*, *Mitchell*, and a more recent decision, *People v. Duran* (2022) 84 Cal.App.5th 920 (*Duran*), wrongly decided that statements made during parole proceedings are admissible in a section 1172.6 evidentiary hearing; Rodriguez's statements to Dr. Hobel as recorded in the assessment report were involuntary; and the admission of Dr. Hobel's testimony regarding these statements violated Rodriguez's due process rights.  The court overruled the objections.

Dr. Hobel testified that Rodriguez's statements in the relevant excerpt of her report accurately reflected what Rodriguez told her during his assessment in 2016.  On cross-examination, Dr. Hobel testified that she did not believe Rodriguez's mental state was impaired at the time of the assessment.  She documented his description of the commitment offense within a week of speaking with him, based on "pen and paper notes" she took during the interview.

After further argument, the court found Rodriguez was the actual killer and therefore ineligible for resentencing relief.

7

Rodriguez timely appealed.

## DISCUSSION

## I.    Senate Bill No. 1437 and Section 1172.6

Senate Bill No. 1437 (2017–2018 Reg. Sess.) eliminated the natural and probable consequences doctrine as a basis for finding a defendant guilty of murder and limited the scope of the felony murder rule. (*People v. Strong* (2022) 13 Cal.5th 698, 707–708; *People v. Lewis* (2021) 11 Cal.5th 952, 957 (*Lewis*); *People v. Gentile* (2020) 10 Cal.5th 830, 842–843 (*Gentile*).) The bill amended section 188 by adding the requirement that, except as stated in section 189, "in order to be convicted of murder, a principal in a crime shall act with malice aforethought. Malice shall not be imputed to a person based solely on his or her participation in a crime." (§ 188, subd. (a)(3).) The amendments to the Penal Code did not invalidate murder convictions based on the theory that the defendant was the sole and actual killer. (Stats. 2018, ch. 1015, § 1, subd. (f); see *People v. Bodely* (2023) 95 Cal.App.5th 1193, 1201 [defendant found to be actual killer ineligible for resentencing under § 1172.6 as a matter of law].)

Under section 1172.6, a person convicted of a qualifying offense under the former law may petition for resentencing if the person could no longer be convicted of that offense under amended section 188. (*Lewis*, *supra*, 11 Cal.5th at p. 959; *Gentile*, *supra*, 10 Cal.5th at p. 847; see also Sen. Bill No. 775 (2021–2022 Reg. Sess.) § 2 [further amending statutory procedures in § 1172.6].)

If the court determines the petitioner has made a prima facie case for relief, the court must issue an order to show cause. (§ 1172.6, subd. (c).) Within 60 days, " 'the court must hold an evidentiary hearing at which the prosecution bears the burden of

proving, "beyond a reasonable doubt, that the petitioner is guilty of murder or attempted murder" under state law as amended by Senate Bill No. 1437 . . . .' " (*People v. Njoku* (2023) 95 Cal.App.5th 27, 41; § 1172.6, subd. (d)(1), (3).) The Evidence Code governs the admission of evidence at the hearing, "except that the court may consider evidence previously admitted at any prior hearing or trial that is admissible under current law . . . ." (§ 1172.6, subd. (d)(3).) The parties "may also offer new or additional evidence to meet their respective burdens." (*Ibid*.)

At this stage, "[t]he question is whether the petitioner committed [the underlying crime] under a still-valid theory, and that is a factual question." (*People v. Clements* (2022) 75 Cal.App.5th 276, 294.) The trial court is therefore "a fact finder tasked with holding the People to the beyond a reasonable doubt standard . . . ." (*Id*. at pp. 294–295.)

## II. The Trial Court Did Not Err in Admitting Rodriguez's 2011 Letter and his 2016 Statements in the Assessment Report

Rodriguez contends that it was fundamentally unfair, in violation of his due process rights, for the trial court to admit the statements he made in his 2011 letter to the Board and the 2016 assessment report identifying himself as the shooter responsible for Bickford's death.[4] Relying on *People v. Coleman* (1975) 13

---

[4] Rodriguez also makes a cursory challenge to the trial court's admission or consideration of the probation report, which contained statements by Rodriguez and Martinez identifying Rodriguez as the person responsible for shooting Bickford. Even assuming the trial court erred by considering the probation report, and that Rodriguez's failure to object in the trial court did not forfeit the argument, any error was harmless. Rodriguez's

Cal.3d 867 (*Coleman*), Rodriguez argues that by admitting his statements, the trial court impermissibly placed his right to participate in parole proceedings in conflict with his privilege against self-incrimination at the resentencing hearing.

In accordance with the weight of the authority on this issue, we find *Coleman* inapposite because Rodriguez was not protected by the privilege against self-incrimination during his section 1172.6, subdivision (d)(3) evidentiary hearing, and incriminating statements he made during his parole proceedings were therefore admissible. (Accord, *People v. Zavala* (2024) 105 Cal.App.5th 366 (*Zavala*); *Duran, supra,* 84 Cal.App.5th 920; *People v. Anderson* (2022) 78 Cal.App.5th 81 (*Anderson*); *Mitchell, supra,* 81 Cal.App.5th 575; *Myles, supra,* 69 Cal.App.5th 688.)

In *Coleman, supra,* 13 Cal.3d 867, our high court held that a defendant's testimony at a probation revocation hearing could not be used in the prosecution's case-in-chief in a subsequent criminal trial stemming from the same alleged criminal conduct. (*Id.* at pp. 888–889.) The court reasoned that the probation revocation process often necessitates that the defendant make "damaging factual admissions." (*Id.* at p. 874.) The use of these admissions at a subsequent criminal trial based on the same conduct conflicts with two policies underlying the privilege against self-incrimination. First, allowing the prosecution to take advantage of a defendant's testimony from a prior probation

2011 letter and his statements in the 2016 assessment report contained equally if not more forthright admissions from Rodriguez about his culpability for Bickford's killing, and we conclude the trial court properly admitted those statements. We therefore do not address questions about the admissibility of the probation report.

revocation hearing would "substantially lighten[ ]" the prosecution's burden of proof in a subsequent criminal trial, where, normally, the defendant would be free to remain silent until the prosecution has made out a prima facie case.[5] (*Coleman*, at p. 876; see *id.* at pp. 873–876.)  Second, requiring a defendant to choose between exercising the privilege against self-incrimination and the right to be heard at a probation revocation hearing would undermine "our 'unwillingness to subject those suspected of crime to the cruel trilemma of self-accusation, perjury or contempt.'  [Citation.]"  (*Id.* at p. 878.)

Courts have applied *Coleman*'s use immunity rule in other contexts "where there is a compulsive sanction against exercise of the privilege against self-incrimination and where the policy of law favors full disclosure or discussion by the accused."  (*People v. Dennis* (1986) 177 Cal.App.3d 863, 875–876; *Anderson, supra,* 78 Cal.App.5th at p. 91.)  Rodriguez urges this court to extend *Coleman*'s use immunity rule to prohibit the use of his statements in his 2011 and 2016 parole proceedings in an

---

[5]    Although the *Coleman* court expressly declined to decide whether pretrial probation revocation hearings force probationers to give up their Fifth Amendment rights against self-incrimination, it noted that its judicial rule "provides protection 'coextensive with the scope of the privilege against self-incrimination[.]' "  (*Coleman, supra,* 13 Cal.3d at p. 892).  Our high court subsequently clarified that *Coleman*'s use immunity rule was "essential to California's privilege against self-incrimination."  (*Ramona R. v. Superior Court* (1985) 37 Cal.3d 802, 809.)

11

evidentiary hearing under section 1172.6, which, he contends, "is materially the same as a criminal bench trial."**6** We disagree.

Unlike the subsequent criminal trial at issue in *Coleman*, the resentencing procedure outlined in section 1172.6 " 'is not a trial *de novo* on all the original charges' " in which the state seeks to convict or criminally punish a defendant. (*People v. Williams* (2020) 57 Cal.App.5th 652, 661.) "Rather, it is a *postconviction* proceeding 'due to the Legislature's inclusion of section 1170.95 in Senate Bill No. 1437 . . . , [as] an "act of lenity" [citation], allowing for the retroactive application of the new law governing accomplice liability for felony murder [citation], for defendants already serving valid sentences for murder.' [Citation.]" (*Ibid*.)

Resentencing under section 1172.6 operates independently of a direct appeal, requiring persons seeking its " 'ameliorative benefits' " to initiate the process by filing a petition and allowing the parties to submit evidence outside the original record. (*People v. Anthony* (2019) 32 Cal.App.5th 1102, 1153; see *id*. at pp. 1152–1153, quoting *People v. Martinez* (2019) 31 Cal.App.5th 719, 724–728.) It does not begin with a presumption of innocence and end in conviction; rather, a defendant's conviction remains "intact" throughout the process and is not vacated unless and until the prosecution fails to prove a defendant's ineligibility for relief beyond a reasonable doubt. (*Duran*, *supra*, 84 Cal.App.5th at p. 930.) Only two outcomes are possible: a defendant's

---

**6** Because we conclude section 1172.6 resentencing proceedings are not criminal trials and therefore do not implicate the right against self-incrimination, we need not address the merits of Rodriguez's contention that "[t]here is no meaningful distinction" between a defendant's statements at a probation revocation hearing and a defendant's statements during parole proceedings.

conviction and sentence remain in place, or a defendant's conviction and sentence are reduced to reflect their proven level of culpability. (*Mitchell*, *supra*, 81 Cal.App.5th at p. 587 [legislature intended § 1172.6 proceedings "to zero in on the 'individual culpability' of each petitioning defendant"].) Thus, "[b]ecause a sentence modification under section 1170.95 is an act of lenity and not a criminal trial, the wrongful admission of evidence does not implicate defendant's constitutional rights under the Fifth Amendment." (*Myles*, *supra*, 69 Cal.App.5th at p. 706.)

Moreover, we reject Rodriguez's argument that he was compelled to make incriminating statements in his parole proceedings because his silence could be "injurious" to his chances for parole. Rodriguez has not demonstrated that his 2011 or 2016 statements constitute the type of "compelled testimony" that federal or state constitutions prohibit the prosecution from using to satisfy its burden of proof. (*People v. Schader* (1969) 71 Cal.2d 761, 770.) Indeed, in his 2011 letter to the Board, Rodriguez declined to discuss additional facts "that were not proven in a court of law or plead[ed] guilty to," indicating he understood he had discretion over the statements he elected to make in the parole proceedings. (See *Myles*, *supra*, 69 Cal.App.5th at p. 706.)

State regulations prohibit the Board from requiring admissions of guilt when setting parole dates, permit incarcerated persons to "refuse to discuss the facts of the crime," and establish that "the refusal shall not be held against the prisoner." (Cal. Code Regs., tit. 15, § 2236; see § 5011, subd. (b).) "Standing alone, a defendant's right to speak on their own behalf at a parole hearing cannot support a conclusion that parole

13

hearing testimony was compelled or involuntary." (*Zavala, supra*, 105 Cal.App.5th at p. 377.) The trial court properly considered Rodriguez's 2011 and 2016 statements and determined he was not entitled to resentencing under section 1172.6.

## DISPOSITION

The trial court's order is affirmed.

**CERTIFIED FOR PUBLICATION**

ADAMS, J.

We concur:

EDMON, P. J.

EGERTON, J.